G. W. GLASSCOCK v. SAMUEL NELSON, ADM'R, AND OTHERS.

Where a party entitled to a league of land as his headright, before the location thereof sold and, together with his wife, conveyed by an instrument in the form of a deed, but without warranty, a specified portion and quantity of such league yet " to be located," and the vendors covenanted in the instrument that, " so soon as we can have the said fourth surveyed off and the boundary lines designated, we bind ourselves to make another deed if necessary to make this claim more full, if the said Glasscock (the vendee) require it of us ;" and the instrument did not identify any particular tract of land as the expected location of such headright : *Held,* that the instrument was only an executory obligation, and did not vest in the obligee title in any part of the league subsequently located by the grantors as their headright, notwithstanding the obligee paid the purchase money at the time of the purchase.

As soon as such headright was located, the obligee in such an instrument had the right to have his portion thereof designated to him by boundaries and conveyed to him by deed ; and upon failure of the obligors so to do, the obligee's right of action for a specific performance or for damages accrued.

It is an established principle, that where a bar has been fixed by statute to the legal remedy, the remedy in a court of equity will, in analagous cases, be confined to the same period.

And although the above principle has not been strictly adopted with reference to the equitable remedy of specific performance, yet, unless there are equitable circumstances of no ordinary character to excuse or account for the delay, ten years will bar the remedy for a specific performance of a contract for the conveyance of real estate.

See this case for presumptions arising out of the lapse of time and want of diligence, and for considerations pertinent to stale demands.

APPEAL from Limestone.    Tried below before the Hon. John Gregg.

This suit was brought on the 18th of October, 1852, by George

W. Glasscock against Samuel Nelson, administrator *de bonis non* of the estate of John D. Smith, deceased, for a specific performance of a certain obligation or deed made by one John Smith and wife for the sale to the plaintiff of one-fourth, being 1,107 acres, of their headright league of land, and for the partition of said league and assignment to plaintiff of the portion claimed by him under said instrument.    By an amended petition, the heirs of John D. Smith were also made parties defendant.

The other facts appear sufficiently in the opinion of the court.

The cause coming to trial at the Spring Term, 1858, a jury was waived, and the court entered judgment for the defendants; from which, a new trial being refused, the plaintiff appealed.

Among the errors assigned were the following : " 2d. The court erred in rendering judgment in favor of the defendants on the law and the evidence.    4th. The court erred in construing the deed of plaintiff to be a stale demand, and bad by the laches of time. 5th. The court erred in regarding the suit on the deed as a suit on an executory contract."

*Gould* and *Walker*, for appellant.    It is contended, 1st, That the instrument executed by John Smith and wife was a full and perfect conveyance, and not a mere executory contract.    It contains all the usual parts of a perfect conveyance; the clause providing for the making of a new deed, if necessary and if required by Glasscock, was inserted by way of abundant caution and for the purpose of securing to Glasscock a deed to certain land by metes and bounds.    John Smith was competent to convey such interest as he had.    (2 Story's Eq., $ 1,040; 1 Maddox Ch. Prac., 437; 1 Fonb. Eq., Book 1, ch. 4, $ and note 9; 5 Wheat. R., 277.)    A sale of incipient rights is valid.    (Emmons v. Oldham, 12 Tex. R., 18.)    If a man sells an estate to which he has no title, and after the conveyance acquire title, he will be compelled to convey it to the purchaser.    (2d Sugden, 518.)    John D. Smith, who is proved to have received a portion of the purchase money from Glasscock to John Smith, and who had full notice of Glasscock's claim, took the land subject to the equity in Glasscock. (2 Sugden, 479, and notes 1 and 2; 12 Tex. R., 18.)

2d. If the court should hold the instrument executed by John Smith to Glasscock to constitute an executory contract, still it has been shown by the recitals of that instrument, and also by the depositions, that the purchase money had been fully paid, and this would give to Glasscock an equitable title, superior to the legal title in John Smith or his vendee with notice, and would enable him to recover and defend possession, or, in case of an undivided interest, to demand partition. (17 Tex. R., 10.)

*Gregg* and *Prendergast*, for appellees.

ROBERTS, J. The instrument from John Smith and wife to Glasscock, although in the shape of a deed, was an executory obligation for one-fourth of a league of land out of the headright claim of John Smith. It was executed on the sixth day of July, 1836, before the land was located. It does not identify any particular tract then expected to be located. It contemplated the surveying off and designating the boundaries of the particular fourth of a league as soon as practicable, and the execution of another deed if necessary upon the request of Glasscock. Smith and wife bound themselves to make this sale good, and for all costs and damages that might accrue from its failure.

As soon as the headright was located in Robertson county, which was as early as in May, 1840, Glasscock had a right to have his fourth of a league designated by boundaries, and a deed therefor executed to him. Upon Smith's failure then to do this, he might have filed his suit for a specific performance, or his action for damages for the failure to make the "sale good." In March, 1842, the deed was executed by John Smith to John D. Smith, the land having been previously patented and all of the balance of it conveyed to Taylor and Potter. This deed to John D. Smith is now assailed upon the ground that John D. had notice of the sale to Glasscock, which notice was proved on the trial. The suit instituted by Glasscock for that purpose, and for a specific performance and partition, was filed in October, 1852—more than twelve years from the time he might have demanded a title or damages—more than ten years after the land had been patented

and all of it deeded away by John Smith to Taylor, Potter and John D. Smith, which is evidenced by John D. Smith's deed proved and recorded in the proper county in March, 1842, and seven years after the death of both John Smith and John D. Smith.

It is contended by appellees that this is a stale demand, for which a court of equity will grant no relief.

The only diligence of Glasscock in following up his claim is the recording his deed or obligation in Milam county in November, 1838, the land not being in that county, and also recording it in Robertson county in March, 1851, and the institution of this suit in October, 1852. By the depositions of two witnesses, taken in October, 1853, Glasscock proved transactions that took place in 1836 and 1839, which established that John D. Smith had notice of Glasscock's purchase from John Smith, and that the purchase money for the land had been paid at the execution of the instrument.

"Sir Thomas Plumer, Master of the Rolls, after reviewing the cases in which lapse of time had been considered a bar in those courts, (courts of equity,) stated the effect of them to be, *first*, that they have ever, upon general principles of their own, even when there was no analagous statutable bar, refused relief to stale demands, when the party had slept upon his right; and *secondly*, that after a bar has been fixed by statute to the legal remedy, the remedy in a court of equity has, in analagous cases, been confined to the same period." (Angell on Lim., 27.)

Admitting, then, that Glasscock's right to recover damages for the non-performance of this obligation had matured by the 5th of February, 1841, when our statute of limitations was passed, his action for the same would have been barred in four years thereafter. We have no decided case in which this rule has been strictly adopted in reference to the equitable remedy for specific performance. Indeed, there has been sometimes a disinclination manifested to fix a definite period as a bar in such case, and an indication that each case should, in some degree, depend on its own peculiar circumstances. (De Cordova v. Smith, 9 Tex., 147–8.) The reason of this is because there may be equitable circumstances which may account for the delay, which would, when

they exist, be cut off by a fixed period.    (2 Story Eq. Jur., 771.)

But in the case of Smith v. Hampton, which is similar to this in many respects, it is said, "where time is suffered to elapse and throw darkness over the transaction, the presumption is that some other arrangement has intervened by which former agreements have been annulled."    And it was then laid down and acted on, that "where the purchase money has been paid by the vendee, according to the terms of the contract, then the longest period of limitation known to our laws, to wit, ten years, must elapse before he can be refused the aid of a court for specific performance." And upon that rule the relief was refused in that case.    (13 Tex., 463.)    See also Nichols v. Pilgrim, 20 Tex. R., 428.

Unless there were equitable circumstances of no ordinary character to excuse or account for the delay, ten years would certainly be most ample time within which the remedy should be pursued.

No such equitable circumstances appear in this case; but, on the other hand, the great delay has been attended by such events as make it peculiarly appropriate for a court of equity to stay its helping hand.

The judgment is therefore affirmed.

Judgment affirmed.