## MATILDA BELL v. ELVIRA WARREN.

1. An instrument of writing, which, in consideration of services to be rendered in locating, etc., purports on its face to convey title to one-half of the land to which the maker is entitled from the government, which is executed before the land is located or surveyed, and obligates the maker to convey thereafter, if required by law, is not a deed, but can be regarded only as an executory contract.

2. In a suit by the heirs of the patentee of land, to quiet title, against the heirs of one with whom the plaintiffs' ancestor had contracted to convey an interest, in consideration of locating and procuring a patent thereafter, the heirs of the patentee will be entitled to recover, in the absence of evidence of performance of the conditions.

3. In such a suit the plaintiff who is not in possession cannot interpose the plea of stale demand, against the executory contract under which the defendants claim a right to a portion of the land.

4. Equity will enforce a contract for a conveyance of a locative interest in land, in favor of the heirs of the locator, who died before the issuance of patent, if the locator, during his lifetime, substantially complied with his contract, by making a selection of the land and procuring its location; though the contract under which the locative interest is claimed required the locator to pay all fees and procure title.

5. If the trust reposed in the locator under such a contract was so far executed in his lifetime, by selecting the land and procuring its location, that any other person could have advanced the money and obtained the patent, then the contract was substantially complied with, and equity will enforce its performance against the patentee.

APPEAL from Bastrop. Tried below before the Hon. J. P. Richardson.

This suit was begun on the eighteenth day of June, 1872, by Matilda Bell, as sole heir of Absolom Williams, against Elvira Warren, as the heir of John York, to quiet title to a half league of land in Bastrop county, Texas, granted to the heirs of Absolom Williams. The patent was issued to the half league in controversy on the fourteenth of June, 1848.

Elvira Warren, in her answer, set up a contract between York and Williams, and alleged its performance on the part of York. The answer averred, and the evidence disclosed, that half of the Absolom Williams league was located in Coleman county. Defendant claimed an interest in both surveys, and prayed for judgment and partition of the land.

It will be seen that the enforcement of the contract was claimed by the heir of York against the heir of Williams, thirty-five years after the date of the contract, and twenty-four years after the land was patented. A jury was waived, and the court rendered judgment in favor of Elvira Warren, for one-half of each of the tracts of land in controversy, and appointed commissioners to make partition, from which judgment Matilda Bell appealed.

*Chesley & Organ,* for appellant, contended that the contract between York and Williams was not a conveyance of the land, but an executory contract, citing Glasscock v. Nelson, 26 Texas, 150, and Ross v. Armstrong, 25 Texas Sup., 366; also that the contract between the parties was executory, and contained evidence of a personal trust in York, which could not be performed in obtaining the patent by his administrator or heirs, citing McLamore v. Heffner, 33 Texas, 514. They also urged that the claim of appellee, based on the executory contract, made in 1837, was a stale demand.

*Jones & Sayers,* for appellee.

WALKER, J.—The appellant was the wife, and is the sole surviving heir of Absolom Williams.

The appellee is the heir of John York.

The appellant sued the appellee to quiet her title to a half league of land in Bastrop county.

The suit grows out of a contract made and entered into on the fifth of April, 1837, between Williams and York. Under the Constitution of 1836, Williams became entitled to a headright for one league and labor of land.

The contract is substantially, that York shall locate the land and procure a patent, as soon as practicable, at his own expense, for which he is to receive in compensation one-half the land, in quantity and value.

The contract is formal and verbose ; it is much like the contract in Ross v. Armstrong, 25 Texas Sup., 356, which this court held was not to be regarded as a deed for the land, but a personal contract, giving the locator an equitable right in the land located.

The facts in this case go to show that Williams died within a year of the making of the contract, and that on June 14, 1848, a patent issued to his heirs for the land in controversy.

York died in 1855, and in 1858 another patent issued to the heirs of Williams for a half league of land in Coleman county.

We are sorry that we are compelled to remark here that the statement of facts is so meagre that we are unable to determine what services or agency York did perform, if any, in the location of the land, either in Bastrop or Coleman county.   We can only deal with the case as it is presented to us on the record.

The appellant holds the legal title to this land.   The court, probably seeking to reach the equities of the case, ordered a partition of the lands between the parties. Neither party appears to have been in actual possession.

In the year following York's death, 1856, his contract with Williams was put upon the records of Bastrop county, and in the partition of York's estate the land in controversy was set apart to the appellee.

But it does not appear that the appellant was made a, party to any proceeding in partition, and is therefore not bound by any action of the probate court in this behalf.

The error assigned to the judgment of the court is substantially that it is against the law and evidence.

We have already remarked that the contract between York and Williams cannot be regarded as a deed. It could not fasten upon any particular portion or tract of land not yet separated by survey or location from the public domain. (Glasscock v. Nelson, 26 Texas, 150.) The contract does not appear to be divisible; the consideration was for the location of the entire league and labor. It was an executory contract; the location of the land was a condition precedent to be performed by York before he could claim compensation in the manner agreed.

And now it is certainly an established principle of the law that he who seeks to enforce an executory contract must aver and prove performance on his own part, or allege such matter in excuse as would in equity discharge him from the obligation to perform.

There appears to have been an issue presented by the pleadings in this case as to whether York did perform his part of the contract with Williams or not.

This was certainly a material issue in the case, yet no evidence appears to have been offered, affirmative or negative, and we do not think the court was justified in assuming performance on the part of York, without proof and in the face of a denial. Yet such probably are the facts in this case, when developed, that it was really through York's agency, and by virtue of his services,

that the lands in Bastrop and Coleman counties were patented to the heirs of Williams.

We do not think the doctrine of stale claim can be made to apply in this case against the appellee. The appellant was not in possession of the land at the commencement of the suit, and it is she who sues to quiet her title. She comes into a court of equity, and must be willing to do equity. Admitting that York did not specifically perform his covenants in the contract with Williams, yet if he substantially performed them, and the heir of Williams has received the benefit therefrom, equity will enforce the contract, in the absence of *mala fides*. We do not consider the fact of York's dying before the issuance of the patent by any means conclusive that he did not, in his lifetime, render the services and advance the money necessary to the procurement of the patent; and if he did this, the delay in the issuance of the patent for three years after his death to the Coleman county land may have been the result of his demise.

We are referred to the case of McLamore v. Heffner, 33 Texas, 514, in support of the position assumed by the appellant's counsel that the contract between Williams and York creates a personal trust in York, which neither his administrator nor any other person could execute for him after his death.

The case referred to does not assume a doctrine different from that which we propose to lay down in this case, and yet we hold that if York, in his lifetime, did so far execute the trust, in the selection of the land and in procuring its location, that any other person could have advanced the money and lifted the patent, and done any such other act as could be done by one person as well as another, then the contract was substantially complied with, and equity will enforce its performance.

We do not construe the contract as obliging York to

locate the whole of the land in one body. This was a matter we think intentionally left to his judgment and discretion. We do not consider the objection made to the equities of the appellee, on the ground of a want of diligence in not procuring an earlier location, as good.

Throughout our reported cases, great latitude in time appears to have been allowed to land locators, in making their selections. The public domain was immense—its settlement was by no means rapid—there was at no time a reason to fear that all the good lands in the State were likely soon to be taken up, and the millions of broad acres of fertile and valuable land yet open to settlement abundantly demonstrates this fact.

It may be that the evidence, when developed in this case, may show that the appellee is not entitled to specific performance of the contract. It may be that York's death, occurring when it did, would leave his representative only entitled to a *quantum meruit*.

The case of Glasscock v. Nelson, already referred to in this opinion, may be supposed to have a strong bearing against the equities set up by the appellee in this case; but equity must adapt itself to all cases, and where the original parties to a contract are dead and gone, but the evidence of the contract survives, the parties all having acted in good faith, and no evidence of a surrender of rights or a culpable neglect to enforce them exists, equity will not hastily declare equities barred by lapse of time, or rights lost to those who have not acted otherwise than in good faith.

Much is said from time to time about stale claims, and rights lost by negligence, but every chancellor should bear in mind that it is the peculiar province and duty which his jurisdiction devolves upon him to consider and give due weight to the facts and circumstances of every case, regarding only precedents which are strictly applica-

ble and which good conscience and public policy require should be followed.

We must reverse this case and remand it, for the reason suggested, that the evidence, as it appears upon this record, is not sufficient to entitle the appellee to specific performance of the contract and partition of the land.

REVERSED AND REMANDED.