MICHAEL REED'S ADM'R v. W. J. WEST ET AL.

LOCATIVE INTEREST—LIMITATION—LACHES—EQUITY.—W., who was entitled, as a colonist, to one fourth of a league of land, entered into a written contract, in 1836, with R., by the terms of which R. was to locate W.'s certificate and procure a title to the one fourth league of land, for which service W. was to make a title to one half of the land to R. In 1868 the administrator of R.'s estate brought suit against the heir of W., and parties in possession of the land under him, for one half of the land patented under the contract, and alleging that the certificate was not obtained until 1838; that it was first located on land embarrassed by a conflicting claim, which location was abandoned; that it was afterwards located on the land in controversy by R., he (R.) paying fifty dollars for the privilege of securing that location; that patent was delayed by the conflicting claim of adjacent locators; that the commissioner refused to issue patent until 1855; that neither W. nor his heirs expressed dissatisfaction with the delay, but acquiesced in the location and enjoyed its benefits; that W. was sought for after patent issued, and could not be found; that the land remained unoccupied until 1868, when the heirs sold it to F., who had notice of R.'s claim, when, for the first time, the contract made between W. and R. was repudiated by W.'s heir. On appeal from a judgment sustaining a demurrer to the petition : Held—

1. When the heirs of the owner of a land certificate have received the benefit of its location by another party than the ances-

tor, under a contract with him for an interest in the land, equity will enforce the contract when there is no evidence of a surrender by the locator of his rights, or a culpable neglect to enforce them.

2. The acquiescence of W. after the long delay of R., in the location as ultimately made, operated as a waiver of his right to object to complying with the contract on account of the delay.

3. Under the facts as stated, R. could have enforced specific performance of the contract when the patent issued in 1855, and he then became the equitable owner of one half the land.

4. When the patent issued to W., the legal title vested in him in trust for the holder of his title bond to R., to the extent of the locative interest; and the petition showed a sufficient excuse for not sooner seeking to enforce a conveyance of the legal title.

5. Until some act done by W., repudiating the trust, limitation did not begin to run against R.

6. Ordinarily, when the holder of a title bond has performed his part of the contract, ten years must elapse before the court will refuse him specific performance.

7. During the suspension of the statutes of limitations, equity will follow the law, and will not, except for some equitable reason, hold a party guilty of laches for not seeking an enforcement of his equitable right during the suspension of the statute.

8. Smith v. Hampton, 13 Tex., 463, discussed.

9. That the contract was of ancient date, constitutes no valid objection to its enforcement in law or in equity.

10. The want of equity on the side of W.'s heir, as the case is presented by the petition, forbids a consideration of the question of R.'s delay in meeting the location, and requires that the lapse of time since the accrual of the cause of action should constitute the only test by which R.'s right to sue should be considered.

11. The judgment of the court sustaining a demurrer to the petition was erroneous.

APPEAL from Bell. Tried below before the Hon. J. P. Osterhout.

This case was before the Supreme Court at a former term, under the title of Flemming v. Reed, 37 Tex., 152.

The administrator of Michael Reed's estate sued for title and partition, claiming one half of a quarter of a league of land patented in the name of Joseph West.

The defendant, A. J. West, was sole heir of Joseph West, and Flemming and others were purchasers, and claiming under conveyance from A. J. West.

The foundation of the suit was an instrument bearing date 16th January, 1836, made by Joseph West with Michael Reed and Z. N. Morrell.

The contract was, in terms, a bond for $2,000, and conditioned for title to be made to one undivided one half when he (West) "shall procure a title or grant from the Government, reciting " that the said Joseph West is entitled to one fourth of a league of land in the Nashville colony; and whereas he has this day bargained and sold the undivided half of said tract of land to M. Reed and Z. N. Morrell for a valuable consideration, West obligating himself under a penalty not to leave the country nor to forfeit his right to headright." On the same day, West made a power of attorney to Reed and Morrell, or either of them, authorizing all necessary acts to procure title, &c.

The petition set out carefully, a compliance with the terms of the obligation by Reed, who had become owner by Morrell's assignment; that patent was obtained for the land June 4, 1855, Reed paying all the office fees and dues therefor.

To repel further the objections of limitation, the plaintiffs, in an amended petition, set up reasons for delay, viz: the Mexican war; the state of the frontier, including part of the Nashville colony; the press of business in the land office; that a location by mistake had been made in the Trinity river country, on patented land; that upon relocation in Bell county, litigation by the owners of the Manchaca eleven-league grant had postponed patent for several years. Also that West's residence was not known to Reed until 1868; and it was further urged that, as the land was a valuable location, and claimed by West, that he was estopped by so claiming the benefits from refusing to share the burdens of the title. It was also alleged that Reed had continuously paid taxes on the land, and that there was no actual possession of said land by either party until in 1867 or 1868. It was also averred, that the only adverse act was West's sale to Flem-

ming, and that notice of Reed's claim, actual and constructive, affected Flemming and the other defendants.

The defendants urged by demurrer that the petition exhibited the fact that the demand was stale, and barred by limitation of four and ten years.

The court sustained the demurrer, and judgment was rendered for defendants, from which plaintiff appealed.

*Terrell & Walker*, for appellant.

I. When did the cause of action accrue?

West never having objected to the delay prior to the patent, and claiming the land, the contract itself, having been fully executed by Reed, should be taken to determine when West was liable to an action.

He is required to make title "when he shall procure a grant or title from the Government."

The grant was of date 4th of June, 1855, and that is the earliest date Reed could call upon West for the deed, and hence was the earliest date from which limitation could run.

But take the contract of 16th January, 1836, and the acts under it, and which form the case, do not Reed and West occupy, to the one fourth league of land, the relation of tenants in common—Reed undertaking to obtain the grant, and West binding himself not to abandon the country? Reed obtained the patent to the land, which includes obtaining certificate, having the same approved, location, having survey made, returning field-notes to land office, payment of Government dues and patent fees, together with the labor of selecting the land, &c.

The patent to West conveys from the State to West the land for use of himself and Reed—Reed having the equitable title to the half interest, and having possession of the patent, the evidence of title. There being no adverse possession of the land, would any limitation at all run to a suit for partition? (See Nichols v. Pilgrim, 20 Tex., 428.)

But as Reed could not demand title before June 4, 1855,

the cause of action could not accrue prior to that date, and limitation could not run. (Martel *v*. Somers, 26 Tex., 561.)

II. In what length of time after June 4, 1855, would the action be barred?

We assume that section 43 of article 12 of Constitution of 1869 will have the effect of suspending limitation from 28th January, 1861. (Bender *v*. Crawford, 33 Tex., 745; Rivers *v*. Washington, 34 Tex., 267.) Between the issuance of patent and the suspension of limitation, less than six years intervened. Does this bar the action?

Considering this as a suit for specific performance, then, the vendee's obligation in the contract for purchase having been performed, we find the law governing it stated by Chief Justice Hemphill, in Smith *v*. Hampton, 13 Tex., 463, that ten years must elapse before he can be refused the aid of a court for specific performance.

In Nichols *v*. Pilgrim, 20 Tex., 428, this rule is recognized, but it would seem that Chief Justice Wheeler regarded such suit as more nearly a suit for partition between tenants in common.

In Glasscock *v*. Nelson, 26 Tex., 154, Justice Roberts recognized ten years as the term required to bar the action, in a case differing from the case at bar, in the terms of the original contract. Glasscock had a right to a deed when the survey should be made; Reed could not demand title until after patent. So, also, in Moore *v*. Bullard, 24 Tex., 149, the court hold that seven years will not bar such action. Mere delay in perfecting the title will not defeat Reed's interest. (Urquhart *v*. Ury, 27 Tex., 7.)

In Yeary *v*. Cummins, 28 Tex., 94, 95, it is again held to be settled by our decisions, that no period of time less than ten years, will interpose a bar to such an action, when the purchase-money has been paid by the vendee and the relation of trustee and *cestui que trust* established. If, then, this be an action for specific performance, payment being shown, it is not barred until ten years after the patent; and if Reed and West

acquired the land by their joint efforts and funds, are they not tenants in common? Limitation would not run until the rights of Reed are shown to have been repudiated by actual possession adverse to Reed, and notice shown of such action. In either view, no defense appears to Reed's action, and the case should be reversed.

*McGennis & Lowry*, for appellee.—We think an allegation in appellant's amended petition, filed 15th December, 1873, (which, we think, was after the judgment sustaining appellee's exceptions,) "that Michael Reed had to pay Thompson fifty dollars to get him to raise a certificate he had on the land in controversy," will probably cause every experienced land locator of that time to ask the question, How many times, from 1835 to 1848, Michael Reed received fifty dollars for raising the West quarter of a league?

We again repeat, as we stated in our brief in the case of Flemming *v.* Reed's Adm'r, " that when a party suffers time to throw its darkening shadows over the transaction, courts will presume the parties made some other satisfactory settlement;" and especially is this the case when both parties to the contract have long since died.

It is a maxim of both law and equity, that no party will be permitted to take advantage of his own wrong; yet it is gravely insisted, by the learned counsel for appellant, that the time between the location of the land in 1848, and the issuance of the patent in 1853, ought not to be computed against those claiming under Michael Reed. We respectfully submit, that if it was in the power of Michael Reed to have obtained the patent for the land by diligence in 1848, and he neglected to do so, whether from negligence or selfishness, he was guilty of laches, and he, and those claiming under him as heirs, must abide the consequences.

The questions involved in this case having been fully discussed and, we think, correctly settled, when it was before this court in 1873, with the parties reversed, we feel it would

be an unnecessary labor to do more than refer the court to the briefs filed by both parties in that case, in order to satisfy the court that we are entitled to an affirmance of the judgment in this case.

GOULD, ASSOCIATE JUSTICE.—On a former appeal in this case, it was held by our predecessors that the plaintiff had slept too long on his rights, and that he had shown no sufficient excuse for the delay. After the case was remanded, the plaintiff filed amended petitions, in which he seeks to account for the delay from 1836 to 1848 in making a location, and from 1848 to 1855 in obtaining patent, and also seeks to excuse his failure to sue until the fall of 1868. He shows that the certificate itself was obtained in 1838 by the efforts of Reed; that it was located first on land which, proving to be inferior and embarrassed by a conflicting claim, was abandoned, and the present location, being "one of the most fertile and valuable tracts of land in the State of Texas," was secured by buying the locative privilege of one Thompson, at a cost of fifty dollars. The issuance of patent, he states, was delayed, without his default, by the owners of an adjoining grant claiming that there was a conflict, and the refusal of the commissioner to issue it until 1855. It is further stated that neither West nor his heirs expressed any dissatisfaction at these delays, but in all respects acquiesced in the location as made, and enjoyed the full benefits of the same.

In excuse of the delay in bringing suit, it is alleged that Joseph West could not be found when the patent issued; that Reed sought for him in vain; and, in the mean time, it would seem that the land remained unoccupied, Reed retaining the patent and paying taxes up to his death; and that not until the sale to Flemming, in 1868, was it known that the locative interest of Reed was disputed. The amended petition, amongst other matters, which it is not deemed necessary to notice, also sets up the civil war and the suspension

of limitation in civil suits from January 28, 1861, to March, 1870.

In the opinion delivered on the former appeal, the court, though reprobating the delay in locating and procuring patent, say, that "in 1855, when the patent issued, a court of equity might have compelled a specific performance of the contract; a court of law awarded damages for the breach." In a subsequent case, where the delays of the locator were scarcely less than in this, Justice Walker, who delivered the opinion in this case, says, justly, that "throughout our reported cases great latitude in time appears to have been allowed to land locators in making their selections." (Bell v. Warren, 39 Tex., 111.) In that case, as in this, the heirs of the owner of the certificate had received the benefit of the location, and it was held that equity would enforce the contract, there being no evidence of a surrender of rights or a culpable neglect to enforce them. If the delay of Reed in making the location was so unreasonable that West might have treated the contract as abandoned, it seems that no such right was ever asserted. Whatever might have been the rights of West growing out of the delay and out of the necessity which he might have been under, after issuance of patent, of accepting the lands secured thereby, however inferior and undesirable, as the only alternative left him, it is alleged that he acquiesced in the location and patent as made, and consequently waived any such right. If the averments of the petition are true, the delays of the locator were more than compensated by the manner in which he finally carried out his part of the contract. Under the facts as alleged in the amended petition, we think that in 1855, when the patent issued, Reed could have enforced specific performance of the contract, and became in fact the equitable owner of the undivided half of the land.

But it seems to have been the opinion of the court, on the facts before it on the former appeal, that, by his delay in bringing suit after his right of action accrued on the issuance

of patent, Reed had lost his right to relief. We think that the averments of the amended petitions show a sufficient excuse for the failure to sue earlier. When patent issued, the legal title vested in West or his heirs, in trust for the holder of the title bond, to the extent of the locative interest. (Gibbons v. Bell, 45 Tex., 417; Smock v. Tandy, 28 Tex., 132.)

If Reed had then gone into possession, his equitable title would have protected him, and entitled him to possession. (Id.) If, on the other hand, West had then repudiated the trust, by selling the entire tract or by holding possession, claiming for himself alone, then limitations would have commenced to run against the plaintiff's claim for equitable relief. (Early v. Sterrett, 18 Tex., 116.) Until some act indicative of an intention to hold adversely, limitations would not commence to run. (Id.)

It does not appear that plaintiff's rights were repudiated until the sale to Flemming in 1868, and on the face of the petition there appears to be no reason for charging him with neglect up to that time.

In Glasscock v. Nelson, 26 Texas, 154, referred to as coincident with the case at bar, the trust had been repudiated and the plaintiff's cause of action had accrued twelve years before suit brought. Ordinarily, where the holder of a title-bond has performed his part of the contract, ten years must elapse before the court will refuse him specific performance. (Yeary v. Cummins, 28 Tex., 94, 95; Glasscock v. Nelson, 26 Tex., 154; Carlisle v. Hart, 27 Tex., 354; Brown v. Guthrie, 27 Tex., 610; 23 Tex., 431; 13 Tex., 459, 484.)

Even charging the plaintiff with laches from the time the patent issued, if the interval during which the statutes of limitation in civil cases were suspended be deducted, less than six years elapsed before suit was brought. Surely it cannot be doubted that during the suspension of the statutes of limitation equity will follow the law, and will not, unless it be for some equitable reason, hold a complainant guilty of laches because of his failure to file his bill during this inter-

val.   There is nothing in the circumstances of this case as disclosed in the pleadings to justify holding him to greater diligence than is required of parties suing on strictly legal demands.   Tested by the rules applicable to ordinary suits for specific performance of title bonds, the plaintiff's demand was not stale.   But it would seem that in suits for specific performance, what is a reasonable time must depend much on the circumstances of each case.   (Kerr on Frauds and Mistakes, 305, and references; De Cordova *v.* Smith, 9 Tex., 147; Bell *v.* Warren, 39 Tex., 111.)   In De Cordova *v.* Smith, there were other circumstances besides lapse of time conducing to prove that the contract had been mutually abandoned.   In Smith *v.* Hampton, 13 Tex., 463, in addition to the fact that there was over ten years' delay unexplained, the claim itself was regarded as suspicious.   We fail to discover any fact or circumstance in this case lending any additional force to the mere lapse of time.   That the contract was of ancient date, constitutes no valid objection to its enforcement, either at law or in equity.   From the averments of the petition, it would seem West's heirs are seeking to appropriate a valuable tract of land, and at the same time to repudiate the contract by means of which it was secured. It further appears that the long delay in the adjustment of this matter is excused by the neglect of West or his heirs to communicate with Reed, or to take any steps calculated to put him on notice that his claim was repudiated.   If it should be supposed that a more rigid rule is to be applied to plaintiff, because of his delay in making the location, the answer is, that the want of manifest equity on the side of appellees, as the case is presented to us, forbids that we should apply to the case any other test than the lapse of time since the accrual of the cause of action.

Because the court erred in its ruling, the judgment is reversed and the cause remanded.

                              REVERSED AND REMANDED.