ISABELLA H. McKIN ET AL. v. J. K. WILLIAMS ET AL.

1. EQUITY—STALE DEMAND.—In an action of trespass to try title to land claimed as a locative interest by the plaintiff, it is error to instruct the jury, that if the contract for the location of the certificate which appropriated the land was made more than ten years before the institution of the suit, to find for defendant. Even should the suit be regarded as an action for specific performance, the plaintiff's right to equitable relief would depend, not on the date of the contract, but upon the lapse of time after the cause of action accrued.

2. STALE DEMAND.—When ten years have elapsed since the plaintiff should have sued, to enforce an agreement for the conveyance of land, equitable relief will not be granted, without some excuse for the delay. Even after the lapse of ten years, there is no fixed rule prohibiting relief, if the circumstances of the case sufficiently account for and excuse the delay.

APPEAL from Shelby. Tried below before the Hon. A. J. Booty.

*Hazelwood & Hull*, for appellants.—Appellants refer the court to the following authorities: Hudson v. Farris, 30 Tex., 574; Watkins v. Gilkerson, 10 Tex., 340; Hooper v. Hall, 30 Tex., 159; Briscoe v. Bronaugh, 1 Tex., 333; Hemming v. Zimmerschitte, 4 Tex., 169; Hodges v. Johnson, 15 Tex., 574; Smock v. Tandy, 28 Tex., 130; Herman on Estoppel, page 283, sec. 263; Paschal's Dig., art. 4288a; Merriweather v. Kennard, 41 Tex., 273; De Cordova v. Smith, 9 Tex., 144; Emmons v. Oldham, 12 Tex., 26.

*Drury Field*, for appellees.

[No briefs for appellees have reached reporters.]

GOULD, ASSOCIATE JUSTICE.—This suit was brought by Mrs. McKin, joined by her husband, to recover of J. K. Williams and wife and William Wilson thirteen labors of the head-

right of Samuel Strickland, the petition being indorsed as an action of trespass to try title, and containing all the averments and the prayer appropriate to'that action.

The petition also contained averments, showing that plaintiffs claimed the land sued for as the locative interest of Mrs. McKin's father, W. G. Anderson, who, at some time prior to 1849, located said Strickland's headright certificate for a league and labor in two tracts, of thirteen labors each, one of which was patented by the procurement of Anderson in 1849, and was accepted and occupied by said Strickland as his half; and the other half, being the land sued for, was acknowledged and respected by him as the locative half of Anderson.

The petition further alleges, that Williams had fraudulently procured from James and David Strickland, two of the heirs of Samuel Strickland, a power of attorney to locate and sell their father's headright, and from' the other two heirs of Samuel Strickland, a quit-claim deed of their interest to his wife, Louisa Williams; under which, having obtained, in 1873, the patent to the second tract of thirteen labors, located by Anderson, he had made sales of parts thereof to defendant Wilson, who, as well as Williams, is charged to have had notice of plaintiffs' rights.    There was in the petition a prayer for the cancellation of the power of attorney and deeds, and that the patent inure to the benefit of the plaintiffs.

By an amended petition, the heirs of Samuel Strickland were made parties defendant, the prayer being for judgment against them for damages, if plaintiffs failed to recover the land.    In a further amendment, a compromise with these heirs, made in April, 1874, before the suit was brought, is set up; and, on the trial, it appears that at the time of this compromise James, David, and Amos Strickland, three of the four heirs of Samuel, executed a conveyance of the land in controversy to the heirs of Anderson, recognizing the locative rights of Anderson, and at the same time received

a reconveyance of one-third thereof, made by Mrs. McKin to them and Mrs. Mann, who was the fourth heir, and one of the two who had in 1866 executed a quit-claim to Mrs. Williams. But it seems that Williams failed to pay Mrs. Mann the purchase-money, and that, after this suit was commenced, judgment was rendered in favor of Mrs. Mann and husband, against Williams, on his note, and against his wife, foreclosing the vendor's lien; and A. M. Carter intervenes in this suit, claiming to have purchased the interest of Williams and wife at a sale under this judgment. The validity of this judgment and of the sale was attacked by Mrs. Williams. The record shows that the plaintiffs dismissed the case as to all of the defendants, except Williams and wife. On the trial, it appears that there was a second compromise, evidenced by an agreement, signed by counsel, and including the intervenor, settling the claims of all the parties, except between plaintiffs and Williams and wife; and it is to be inferred, that this second compromise led to the plaintiffs' action in dismissing as to all save Williams and wife.

The evidence of plaintiffs did not fix the date or terms of the locative contract, further than was stated in the petition. Two witnesses testify that Samuel Strickland, up to his death in 1850 or 1851, lived on the half league patented in 1849; and that he stated repeatedly that he had given the other half league to Anderson for locating. One of those witnesses says he pointed out the land in controversy as the land so given to Anderson. The heirs of Strickland are not shown to have asserted any claim to this half until 1860, when the power of attorney to Williams was made by two of the heirs. Further than that he had a survey made, (perhaps for the purpose of correcting a conflict which had prevented the issuance of patent,) that he procured the patent, and that he had made sales to Wilson, the statement of facts does not show what was done by Williams.

The plaintiffs, besides the first compromise deed and the second compromise agreement, read in evidence the judg-

ment in favor of Mrs. Mann, and the order of sale thereon; but the court excluded the return of sale and the sheriff's deed.

The court instructed the jury to find for the defendants, if the contract for the location of the certificate was made more than ten years before the institution of suit.

Under this charge, the jury were compelled to find for defendants; for, whilst the date of the locative contract was not fixed, either in the pleadings or evidence, it was evidently made before the issuance of patent to the first tract, in 1849,— much more than ten years before suit was commenced.

The charge evidently treats the suit as being for specific performance; but if it could be so regarded, the plaintiffs' right to equitable relief was dependent, not upon the date of the contract, but upon the lapse of time after the cause of action accrued. (Hodges *v.* Johnson, 15 Tex., 574.) When ten years have elapsed since the plaintiffs should have sued, equitable relief will not be granted, without some excuse for the delay. (Carlisle *v.* Hart, 27 Tex., 354.)

But even after the lapse of ten years, there is no fixed rule prohibiting relief, if the circumstances of the case sufficiently account for and excuse the delay. (Reed *v.* West, 47 Tex., 240; Bell *v.* Warren, 39 Tex., 111; Holman *v.* Criswell; 15 Tex., 398; Williams *v.* Talbot, 16 Tex., 1.)

Whether the plaintiffs in this case are entitled to equitable relief, is a question which we do not feel called on to determine. The facts of the case are evidently but imperfectly developed, and it is not deemed proper to pass upon the question; especially as it is not, by any means, clear that the ultimate decision of the case will involve any such question.

As we have seen, the action was, at least in one view of it, an action of trespass to try title. We will not inquire whether, outside of any conveyance from the heirs, the plaintiffs might not have rights enforcible in that form of action, as in case of an executed locative contract, followed by partition. (Gibbons *v.* Bell, 45 Tex., 418.) The plaintiffs, having produced

a patent to Samuel Strickland, and a conveyance from all his heirs save one, exhibited a title sufficient to support a recovery of an undivided interest in the land, unless a better title was shown in the defendants, or some one else. The title of Williams and wife was from only two of the heirs, and it does not appear that the sale to Wilson was exclusively under the power of attorney from the other two heirs, nor that it was made prior to the deed made by those heirs to Anderson's heirs. Without further discussing questions which counsel have not presented, we hold that the charge of the court was erroneous; and as the error was most material, it is fatal to the judgment.

It is supposed that the plaintiffs offered the sheriff's deed to Carter, with the view of getting the benefit of the last compromise. The exclusion of this deed is one of the errors assigned. But the deed is not made a part of the bill of exceptions, nor is it stated on what ground it was objected to or excluded. The record does not show that it was erroneously excluded. It may have been because of defective proof of its execution, or because of some defect apparent on the face of the instrument. It may have been on the ground that it was a sale *pendente lite,* as that position is assumed in one of Mrs. Williams' pleas opposing Carter's intervention. If on the latter ground, the correctness of the ruling could hardly be maintained, as this was a sale under judicial process, and not a voluntary alienation. (Jemison *v.* Halbert, 47 Tex., 180.) But it is not designed to decide a question not presented. The object is to call attention to the questions likely to recur, if there should be another trial of the cause.

For the error in the charge of the court, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.