ELIZA J. ROBINSON ET AL. v. CAROLINE KAMPMANN ET AL.

No. 109.

1. **Parties to a Proceeding to Foreclose a Vendor's Lien.** — The subvendee of a vendee who owes the purchase money on land he conveys is not a necessary party to foreclosure proceedings. Ufford v. Wells, 52 Texas, 612.

2. **Sale Under Foreclosure of Vendor's Lien — Right of a Previous Vendee to Redeem.** — A subvendee not made a party to a proceeding to enforce a vendor's claim for money by a sale of the land, has the right to pay for the land, and thus obtain title to it, whether such relief be sought by the subvendee in a suit against a purchaser at the sale, to enforce the right of redemption, or to establish his right to pay for and to have the land, or be set up by him in an action by the purchaser to recover the land.

3. **Same.** — The equities of a subvendee not made a party to the proceedings are as strong against a purchaser at such sale, having knowledge of his rights, as they are between the original vendor and vendee.

4. **Laches.** — A lot was conveyed in 1854 by a city, with a vendor's lien retained to secure unpaid purchase money. The lot was sold by the city in 1875, under a foreclosure of the lien. An heir of a subvendee under the first vendee (neither he nor his ancestor were a party to the foreclosure) brought his suit, four years after his majority, against the executrix of the purchaser at the foreclosure. *Held*, he was not guilty of laches in bringing his suit. That he could redeem his interest in the lot by paying his share of the purchase money at the foreclosure, with interest.

APPEAL from Bexar. Tried below before Hon. W. W. KING.

*McLeary & Fleming*, for appellants.—1. The court erred in holding that the contract between the city and Schleicher was executory, and that the legal title remained in the city, and that the vendees of Schleicher were not necessary parties to the suit for foreclosure, and that the plaintiff's rights were concluded by the sale under the decree of foreclosure, in that the facts show that although the contract was executory in its nature, that the city of San Antonio, by its long delay in filing suit and declaring the note due (the principal of which was not mature until the year 1904), had waived the date at which the note was to mature on account of a

failure to pay the interest, and a new contract was thereby made, by which said note could only be made to mature by notice to the appellants, who were the owners of the property, or by the maturity of the principal in the year 1904. Scarborough v. Arrant, 25 Texas, 129; Tom v. Wollhoeffer, 61 Texas, 279; Coddington v. Wells, 59 Texas, 49; Ufford v. Wells, 52 Texas, 619; Cattle Co. v. Boon, 73 Texas, 556.

2. The judgment rendered in the foreclosure suit shows upon its face that it was rendered by agreement of the parties to said suit; and under the facts and circumstances in this case, the city had no right to enter into an agreement with the original vendor, in the absence of the heirs of Joshua D. Robinson, who were the owners of the property. Hardin v. Blackshear, 60 Texas, 12.

*Simpson & James*, for appellees.—1. A vendee in an executory contract for sale of land, such as where the vendor expressly retains the vendor's lien, has no title in the land that he can convey to another, in the sense that his vendee becomes a necessary and indispensable party to a suit to foreclose said lien. An exception to the foregoing proposition seems to be sanctioned by the decisions where the remote vendee is in actual possession when the foreclosure suit is brought. Ufford v. Wells, 52 Texas, 619; Foster v. Powers, 64 Texas, 248; Robinson v. Black, 56 Texas, 215; Preston v. Breedlove, 45 Texas, 50.

2. In executory contracts such as the one in question, after default by the vendee and delay upon the part of the vendor in pressing for payment, notice to the vendee has not been held necessary to the exercise of his right to sue and foreclose the lien; but such rule has been applied in cases where the vendee elects not to sue, but to rescind and exercise his power to resell the land, and in these cases only. This rule is founded on the reason that a resale of the property by the vendor is a harsh and arbitrary remedy. Scarborough v. Arrant, 25 Texas, 129; Tom v. Wollhoeffer, 61 Texas, 279; Coddington v. Wells, 59 Texas, 49.

FLY, Associate Justice.—Action of trespass to try title was, on February 24, 1891, instituted by appellants against Caroline Kampmann, executrix of estate of J. H. Kampmann, deceased, for the land in controversy, being a certain lot in the city of San Antonio. A supplemental petition was filed, making the city of San Antonio a party defendant.

Both the appellees pleaded not guilty, and Caroline Kampmann also pleaded five and ten years limitation.

In a second supplemental petition the appellants Joshua D. Robinson and Jennie P. Whitney alleged minority in avoidance of the plea of limitation.

The case was tried without a jury, and judgment rendered for appellees.

We adopt the findings of fact of the trial judge as our conclusions of fact, with the exception of the tenth finding.

The conclusions are as follows:

" 1.  That in May, 1854, the city of San Antonio and Gustav Schleicher entered into a contract, signed by each of them, by which the city. conveyed to Schleicher the land described in the petition, together with another tract of 28.69 acres, expressing a consideration one-third of which was paid in cash and the balance payable in fifty years, with 8 per cent interest per annum, the interest payable semi-annually; said contract expressing a vendor's lien in favor of the city, and providing substantially that if said interest installments, or any one of them, should not be paid when due, the whole amount of the unpaid purchase money should become due, and foreclosure could be had by the city for the entire balance of the consideration, interest, and costs, and also providing that the said G. Schleicher could pay off the whole balance of consideration at any time.  This was duly recorded on May 8, 1854.

" 2.  That default in payment of interest installments commenced in 1856, and no payment thereof, or of principal, was afterwards made or tendered to the city by any one.

" 3.  That in 1855 Schleicher conveyed the tract in controversy to M. A. Dooley, which deed was a warranty deed except as to the contract with the city.  This deed was recorded in February, 1855.  And that on November 15, 1858, M. A. Dooley conveyed said tract to Joshua D. Robinson, the latter being then married to plaintiff Eliza J. Robinson, this deed referring to the conveyance by the city to Schleicher, and by Schleicher to Dooley.  This deed was duly recorded on November 17, 1858.

" 4.  That plaintiff Eliza J. Robinson is the widow of Joshua D. Robinson, and Mrs. Whitney a daughter, and Joshua D. Robinson a son of said Joshua D. Robinson, the last named (the father) having died in the year 1866 in San Antonio, Texas.

" 5.  That Mrs. Whitney became a married woman in the year 1881, and Joshua D. Robinson, one of the plaintiffs, became of age on April 3, 1887; and that defendant took actual possession of the tract in controversy in the year 1880, and has so adversely held the same, under deed duly registered, since the beginning of such possession, and has paid all taxes on same since 1875.

" 6.  That in the year 1868 A. O. Cooley became administrator of the said Joshua D. Robinson's estate, the administration being opened in Bexar County, Texas.  Such administration continued until 1882, when it was closed.  That the property in question, being lot number 10, of 56 acres, was, with another tract, number 14, of 28.69 acres, placed upon the inventory of said estate in 1870, and both appraised together at $150; and that the administrator did not assess or pay any taxes on said tracts

of land, although he paid taxes on other real property inventoried; nor was any disposition made of either of the two tracts during the administration by the administrator.

" 7. That in the year 1870 the city of San Antonio filed suit in the District Court of Bexar County, against Gustav Schleichler and others, to recover balance of purchase money and interest due on the original contract, and to foreclose the vendor's lien on said lots numbers 10 and 14. That neither the administrator of Joshua D. Robinson's estate nor the heirs of Joshua D. Robinson were joined as parties to the suit; and that in the year 1874 judgment was rendered in favor of the city in said suit, and foreclosure decreed as to said two parcels of land, and under an order of sale issued on said judgment said lands were sold by the sheriff, and J. H. Kampmann became at such sale the purchaser of lot number 10, and obtained a sheriff's deed therefor.

" 8. That defendant Caroline Kampmann is the sole devisee of J. H. Kampmann.

" 9. That the only act shown to have been done by either party after 1856 and until the filing of said foreclosure suit, in respect to said contract, was, that at sometime while A. O. Cooley was the administrator of the estate, he, Cooley, ' called the attention of the city authorities to Robinson's title, but could get no action taken or reply, except that they knew of no claim by the city and nothing of Robinson's title; ' and it was not made to appear who the person or persons called city authorities were, or what authority they had.

" 10. That the amount paid by J. H. Kampmann for the land was $415, which, with legal interest from date of sale under foreclosure proceedings, was offered to be repaid to Kampmann by appellants."

Appellants admit in their brief that Mrs. Eliza J. Robinson and Mrs. Whitney are barred by limitation, and only insist on a revision of the judgment of the lower court as to the one-fourth interest of Joshua D. Robinson, who was about twenty-five years of age when the suit was instituted. Appellant Joshua D. Robinson not being barred by the statute of limitations, and having offered to refund the purchase money, with legal interest thereon from date of foreclosure sale, the only question to be decided is whether he has equity of redemption of the land by paying off the money, or has lost this right by his laches. It has been repeatedly held, that the subvendee of a vendee who owes the purchase money on land he conveys is not a necessary party to foreclosure proceedings. Ufford v. Wells, 52 Texas, 612; Foster v. Powers, 64 Texas, 247; Land and Cattle Co. v. Boon, 73 Texas, 556.

These cases have been elaborately reviewed by Chief Justice Stayton in the case of Pierce v. Moreman, 84 Texas, 596, and it is held, that while these cases hold that the subvendee can not assert title as against the purchaser at the foreclosure sale, still it is not held in either of the cases that

equitable relief will be denied to a person, not made a party to the fore-closure proceedings, who comes asking such relief and offering to do equity.

In 1855 M. A. Dooley bought the land from Gustav Schleicher, who was the vendee of the city of San Antonio, in which deed it was stated that Schleicher was indebted for part of the purchase money of the land. In 1858 Dooley sold to the father of Joshua D. Robinson, reference being had in the deed to the conveyances from Schleicher to Dooley and from the city of San Antonio to Schleicher. The ancestor of appellant bought with full knowledge that the legal title to the land was still in the city of San Antonio, and after his purchase he held no stronger equities than those held by Schleicher.

In Pierce v. Moreman, it is said: " These quotations from the opinions in the cases referred to clearly show that it was not the intention of this court to deny to a subvendee, not made a party to the foreclosure proceeding, the right to pay for the land, and thus obtain title to it, whether the purchaser was the original vendor or some other person, if the equities of a subvendee were such as to entitle him to relief under the general rules of equity applicable to the rights of vendor and vendee. Equities of a subvendee not made a party to the proceedings to enforce a vendor's claim for money by sale of the land are as strong against a purchaser at such sale having knowledge of his rights, as they are between the original vendor and vendee. It matters not whether the relief be sought by a subvendee by a suit against the purchaser, practically to enforce the right of redemption or to establish his right to pay for and have the land, or be set up by him in an action by the purchaser to recover the land; and when set up in either manner such equities will be enforced in all proper cases." This decision, however, holds further, that the suit was promptly brought, and there could be no claim of laches or other like defense. We are by this opinion narrowed down to the decision of whether there was such laches as shown by the record to preclude appellant Joshua D. Robinson from recovering his share of the land.

What are the " general rules of equity applicable to the right of vendor and vendee," as applied to the claim of appellants ? In equity the title to the land in controversy was in Gustav Schleicher, and he would be looked upon and treated as the owner of the land; and although the vendor remained the owner of the legal estate, he held it as a trustee for the vendee, having a lien on the land for the unpaid purchase money. As the vendee had acquired an equitable title in the land, he could encumber it or dispose of it, and his equitable rights followed it into the hands of his vendees, and their equitable rights could be asserted against those who claim under the original vendor as fully as though invoked between the original vendor and vendee. We are of the opinion that

there was nothing that occurred prior to the majority of appellant Joshua D. Robinson to raise the question of laches as to him.

The same causes that will suspend the statute of limitations will usually defeat the plea of stale demand, and in many cases it has been held that infancy and coverture will be a sufficient answer to a plea of stale demand. Reed v. West, 47 Texas, 248; Hill v. Moore, 85 Texas, 336. As held in Pierce v. Moreman, equity would have permitted Schleicher or his heirs, after the foreclosure sale and before any intervening equities may have arisen, to have redeemed the title to the land by paying the purchaser the purchase money, with interest thereon from date of foreclosure of sale. At the time this sale was made appellant Joshua D. Robinson was only nine years of age, and his father had died in 1866, about the time of the minor's birth. There being no circumstances to charge the father with laches in connection with his equitable demand, the question of laches and stale demand could not arise in connection with his son until after his majority in 1887, less than four years before he brought this suit. The land is in the hands of the widow of J. H. Kampmann, the original purchaser, and there have been no improvements put upon the land, with the exception that it has been fenced and is being used as a pasture. The situation of the Kampmann estate has not been altered for the worse by the delay since the majority of appellant, the parties standing in about the same relation to each other that they would had the redemption taken place in 1887, or even directly after the sale in 1875. There are no circumstances surrounding the case that would render it revolting or offensive to good conscience or public convenience, but the necessary conscience, good faith, and reasonable diligence required by equity seem to be with the appellant in his demand. The rule, that equity favors the vigilant, and not those who slumber on their rights, is not, we believe, infracted by the acts of appellant Joshua D. Robinson.

Laches is a neglect to do something for a length of time that a man by law or in duty bound ought to do, and the application of the doctrine must be governed by and depend upon the facts in each case. In this case appellant might have brought this suit earlier, but he has done nothing to mislead the Kampmanns, nor have their interests been prejudiced or their rights in any manner impaired by the delay. J. H. Kampmann knew of the rights of the Robinsons when he made the purchase at the foreclosure, and knew that they had not been made parties to the suit. Nothing has been shown in this case to estop the appellant Joshua D. Robinson from asserting his claim to the land. He offers to pay off the amount due on his one-fourth share of his estate, and is in a position to ask for equity. There has been no act upon the part of this appellant calculated to cause appellees to believe that he had abandoned his claim to the land, and there are no equities that have arisen in favor of them

that are superior to those of this appellant; and if their equities are equal, those of appellant having priority in point of time should have the precedence, unless he had by his acts created a ground for stale demand being applied, and thereby precluded him from asserting his claim.

Appellee Mrs. Kampmann asks that should the land be adjudged to appellant, that she recover in addition to purchase money and interest the taxes paid on the land since the purchase; but there is no evidence in the record fixing the amount of the taxes, and there was no exception taken to the tender of purchase money and interest, without specifying the taxes. We think the taxes ought to have been repaid, but the shape of the pleadings and evidence will preclude us from so ordering.

It is the judgment of this court that the judgment of the lower court as to Mrs. Eliza J. Robinson, Jennie P. Whitney and her husband, E. Herbert Whitney, be in all things affirmed; but it is reversed as to Joshua D. Robinson, and judgment is here rendered for said Joshua D. Robinson for one-fourth of the land sued for; and in favor of Mrs. Caroline Kampmann, executrix of the estate of J. H. Kampmann, deceased, against Joshua D. Robinson for the fourth of $415, to-wit, the sum of $103.75, together with interest at 8 per cent per annum thereon from April 6, 1875, and that she have a lien on said one-fourth interest until said sum is paid; that three-fourths of the costs of this and the lower court be adjudged against Eliza D. Robinson and Jennie P. Whitney and E. Herbert Whitney, and the other fourth be adjudged against Mrs. Kampmann. There being no prayer for partition, this court can not order a partition as asked by appellee in her brief.

*Affirmed in part.*
*Reversed and rendered in part.*

Delivered December 13, 1893.

Chief Justice James did not sit in this case.

Motion for rehearing overruled.