MASTERSON et al. v. PULLEN. (No. 6109.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 18, 1918.)

1. APPEAL AND ERROR ☞527(2)—BILL OF EXCEPTIONS—FAILURE TO FILE CONCLUSIONS OF FACT AND LAW.

Court's failure to file conclusions of fact and law will not be considered on appeal without a bill of exceptions.

2. QUIETING TITLE ☞44(4)—SUFFICIENCY OF EVIDENCE—TITLE OF PLAINTIFF—PAYMENT ON LAND CONTRACT.

In suit to remove cloud from title to land, wherein plaintiff's title was attacked on ground that he had contracted to sell land to third party, had placed such party in possession, and received $1,000 earnest money on contract, evidence *held* insufficient to warrant finding that plaintiff had received such sum on the contract.

3. VENDOR AND PURCHASER ☞54—PAYMENT OF CONSIDERATION—POSSESSION—PURCHASER'S EQUITABLE TITLE.

Purchaser, having possession of land and having paid the entire consideration, has an equitable title superior to vendor's legal title.

4. VENDOR AND PURCHASER ☞54 — RIGHTS OF PURCHASER.

Purchaser who has not paid any of the consideration has not sufficient title to authorize recovery of land from vendor, his only right being to tender consideration and ask for specific performance.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

5. QUIETING TITLE ☞10(2)—RIGHT TO BRING ACTION—TITLE OF PLAINTIFF.

Vendor who has received no part of the consideration has sufficient title to maintain a suit to remove cloud from the title to the land.

6. TRESPASS TO TRY TITLE ☞6(1) — HOLDER OF NAKED LEGAL TITLE.

The holder of a naked legal title may maintain an action of trespass to try title.

7. ADVERSE POSSESSION ☞60(3)—ACKNOWLEDGMENT OF RIGHT OF STATE.

A person in possession of land, though acknowledging a better right in the state, may hold adverse possession as against true owner.

8. ADVERSE POSSESSION ☞70—HOSTILITY TO OWNER.

The mere holding of land, under the belief that the land is the state's and with the purpose of acquiring it lawfully at some future time, does not define the attitude of the possessor as hostile to the claim of the owner of whose existence he is ignorant.

9. ADVERSE POSSESSION ☞60(3) — IMPROVEMENTS—POSSESSION ADVERSE TO TRUE OWNER.

Plaintiff, who took possession of land for purpose of acquiring land from state under belief that land was vacant, but who after being told that land was not vacant, and with knowledge of real owner, continued for a period of ten years to hold land and make substantial improvements in fence inclosing land, *held* to have held land adversely to true owner.

10. ADVERSE POSSESSION ☞30 — NOTICE — FENCE.

Fence inclosing 360 acres of land was a sufficient notorious assertion of holder's adverse claim, though land was in a very rough, broken, uninhabited country.

Appeal from District Court, Edwards County; James Cornell, Judge.

Action by L. M. Pullen against Reba B. Masterson and others. Judgment for plaintiff, and defendants appeal. Affirmed.

W. C. Linden and William C. Church, both of San Antonio, for appellants.
Jno. W. Hill, of Uvalde, for appellee.

MOURSUND, J. L. M. Pullen sued Reba B. Masterson, E. R. Guenther, Adolph Wagner, and his wife, Amanda Wagner, to remove cloud from the title to 360 acres of land in Edwards county, described by metes and bounds, pleading specially title by limitation under the three and ten years' statutes. The record contains no answer by Reba B. Masterson. The other defendants answered by plea of not guilty.

Judgment was rendered in favor of plaintiff.

[1] Complaint is made of the failure of the court to file his conclusions of fact and law. The failure to file such conclusions will not be considered without a bill of exceptions.

Landa v. Heermann, 85 Tex. 1, 19 S. W. 885.

[2-4] It is contended that Pullen is not entitled to recover the land for the reason that, prior to the institution of the suit, he had entered into a contract in writing for the sale of such land, under the terms of which $1,000 earnest money had been paid to him, and the person who contracted to purchase the land had been put in possession thereof and was still in possession at the time of the trial. The contract was not introduced in evidence. Plaintiff testified that he had contracted in writing prior to the institution of the suit to sell certain lands, including that in controversy, to Neal Jernigan; that Jernigan ascertained that plaintiff could not give him title to the 360 acres in controversy, and that he had to prove up his occupancy as to the west half of section 34. It appears from his testimony that Jernigan parted with $1,000, which was at the time of the trial in a bank; but he did not explain whether it had been paid to him, or whether it accompanied the contract and was in the nature of a deposit to secure Jernigan's compliance with the terms of the contract when plaintiff should have complied with his part. Jernigan was to pay about $6,000 additional. This testimony does not warrant a finding that even the $1,000 had been paid to plaintiff. Had the entire consideration been paid, and possession given, Jernigan would have had an equitable title superior to the legal title of plaintiff. Secrest v. Jones, 21 Tex. 121. As it was, Jernigan had no such title as would authorize him to recover the land from plaintiff. He could only tender the consideration and ask for specific performance of the contract. Wallace v. Wilcox, 27 Tex. 60; Bell v. Warren, 39 Tex. 106; Prusiecke v. Ramzinski, 81 S. W. 771.

[5, 6] There is no merit in the appellant's contention that at the time of the institution of the suit plaintiff had parted with his title. The holder of a naked legal title may maintain an action of trespass to try title, and plaintiff occupied a much more favorable position. Dean v. Jagoe, 46 Tex. Civ. App. 389, 103 S. W. 195.

In the second assignment it is contended that the evidence does not sustain a finding that plaintiff's possession was adverse for a period of 10 years. Plaintiff inclosed the land about 25 or 27 years before the date of the trial, and made application to purchase the same as vacant land; but the exact date thereof is not shown. He testified his papers were returned and he was notified that the land he was claiming conflicted with some other surveys, but he knew it did not. He also testified that some one notified him he had $14 "in the land office," and asked him if he wanted him to collect it, and he

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

paid no attention to the notice, his idea being that he expected to get the land "at some time or other"; that he was not trying to beat anybody out of it; that he left the money there for the purpose of paying the state for the title. He did not testify when this occurred, and when it was that he was not trying to beat anybody out of the land. In 1903 he received a letter from Rogan & McInerney, attorneys at Austin, stating that there was no vacancy, as the surveys of block J call to tie to the Southern Pacific surveys, and that the land office had so ruled on the 1900 files that were sought to be located on the supposed vacancy. He testified that from the time he received this letter he knew the owners of the surveys in block J owned the land in controversy; that from that time forward he had not claimed it was vacant; that he had claimed said land against the whole world during the entire time he had it fenced. He testified further that the last time he tried to get the commissioner to recognize a vacancy there was in 1903, and that "they claimed it was covered by 15"; that he had not frequently stated within the last few years that he believed it was vacant land; that he knew better than that; that he had known since 1903 that it was not state land, and had not claimed it since then as state land; that he had been claiming it adversely to Mr. Masterson ever since then. The evidence warrants a finding that plaintiff improved his fence on the land materially about 6 or 7 years before the trial. His testimony was sought to be weakened by asking him whether he had not made statements to certain persons, tending to show that he still believed within a few years prior to the trial that there was a vacancy. He first denied making any such statements, but finally said he had no recollection of having conversations such as were inquired about. Luther Roberts testified that about 3 years before the trial plaintiff told him he had no deed to the land, but had been trying to get a deed for a good while; that his money was at the land office, and he expected to get a deed; that plaintiff did not tell him until the spring of 1917 that he was claiming the land; that he then said he was expecting to get a deed from the state or he was going to sue Masterson for a deed. Quincey Craig testified that he had talked to plaintiff concerning this land, and while most of his testimony appears to relate to what plaintiff thought and claimed at the time he had a survey made on the theory that it was vacant land or school land, which must have been prior to 1903, he also said:

"I do not remember when was the last time he thought it was vacant land—I think within the last four or five years. I could not say whether or not it was within the last two or three years; it has been something like five years."

While plaintiff testified he paid taxes on the land in controversy, the tax collector testified that from 1913 to date of trial the tax rolls showed no payment of taxes by plaintiff on said land. He testified his examination did not extend further back. It appears that the assessor's record was offered in evidence, and that a copy was intended to be attached to the statement of facts; but it was not attached.

The court recited in his judgment, and the recital is sustained by the evidence, that the land in controversy is a part of survey No. 15, block J, which survey was shown to have been patented to Branch T. Masterson on October 23, 1882.

[7-9] Under the rules laid down in the case of Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 31 L. R. A. (N. S.) 153, it is clear that, even though a person in possession of land may acknowledge a better right in the state, he may hold adverse possession thereof as against the true owner. It appears, however, that the mere holding of it under the belief that the land is the state's and with the purpose of acquiring it lawfully at some future time does not define the attitude of the possessor as hostile to the claim of an owner of whose existence he is ignorant. In this case it is shown that after 1903 plaintiff knew that the owner of survey 15, block J, was held to be the owner of the land in controversy by the Commissioner of the General Land Office, and by attorneys whom he consulted, and therefore he not only had a suspicion of the claim of the true owner, but, if his testimony be believed, such a well-defined belief in the merit of such claim that he did not renew his efforts to acquire title from the state. The fact that his possession was still maintained under a claim of right to acquire the title from the state, if such is the fact, would not necessarily show that his possession was not adverse to that of the true owner. After he received the letter from Rogan & McInerney, he continued to hold possession of the land for more than ten years, during all of which time his fences were promptly repaired when down, and about seven years before the trial a substantial improvement was made in a portion of the fence. It is true that at some time, according to his testimony, he did not want to beat anybody out of the land; but that may have been prior to 1903, and, if he testified to the truth in making other statements, it must have been prior or to that time. We conclude that we would not be warranted in setting aside the finding of the trial court that plaintiff's possession was adverse to the true owner for a period of ten years prior to the institution of the suit.

[10] The further contention is made that as no improvements were placed on the land other than the fence, which ran across the

same in a very rough, broken, uninhabited country, the plaintiff's possession was not such a notorious assertion of an adverse claim as was sufficient to put defendants and their predecessors in title upon notice thereof. There is no merit in this contention. The cases relied on are cases in which it has been held that possession of a few acres by a neighbor could not give title to 160 acres, as the owner might well believe that his neighbor had made a mistake concerning the division line. This case involves the land actually inclosed, consisting of 360 acres of land.

The judgment is affirmed.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes