GALEN HODGES v. MOSES JOHNSON, EX'OR, AND OTHERS.

The testimony of the beneficiary of a resulting trust in lands, who has conveyed his interest by quit claim only, is competent evidence for the plaintiff, in a suit by the vendee against the trustee, or his representatives, to establish the trust.

The Statute of 1840 concerning frauds and fraudulent conveyances has no application to contracts made before its passage.

Where A took a transfer of a land certificate to B in 1837, upon agreement with the latter that he should have the same located and patented and then re-convey one half the land to A ; and the patent was not obtained until 1847 ; and B acknowledged the trust in 1848, and the first adverse act denoting hostility to the claim of A, which appeared in the record, was the sale of the land by B's administrator on the 5th of September, 1852, and this suit was brought, to enforce the trust, on the 2nd of December, thereafter, before the payment of the purchase money, it was held that this was not a proper case for the application of the doctrine that Courts of equity will not give their aid to enforce stale claims or demands.

It seems that mere lapse of time, without proof of adverse claim, will not bar a suit to enforce a parol or resulting trust, short of ten years, to be computed from the earliest date at which it could have been enforced by suit.

Appeal from Bexar.

*Hewitt & Newton,* for appellant.

*I. A. & G. W. Paschal,* for appellees.

HEMPHILL, CH. J. The appellant (being plaintiff below)

claims as the assignee of one Wm. F. Oliver, the one half of a third of a league of land and prays for partition.

The substance of his averments is, that in the year 1837 the said Oliver and D. C. Gilmore became the joint owners of the headright of one Camel Cooper ; that the whole of the purchase money was advanced by Oliver ; and that Gilmore, in consideration of his interest, was to be at the expense and labor of having the certificate located, surveyed and patented ; that for purposes of convenience, the transfer was to be made to Gilmore, omitting the name of Oliver , but that Gilmore should be entitled to only half of the land, holding the other half in trust for Oliver, and conveying the same to him, after the issue of the patent ; that the certificate was issued to Gilmore as assignee in 1838 ; that Gilmore had the same located and surveyed and a patent was issued thereon in December, 1847 ; that in 1851 the plaintiff became the owner of the interest of Oliver, by purchase ; that Gilmore had departed this life and Moses Johnson been appointed his executor, but that neither the testator during his life, nor has his executor since his death complied with the stipulations of the agreement ; that the land was sold on the 5th of September, 1852, by the executor of Gilmore at public sale on a twelve months credit to L. W. Alexander. During the progress of the suit, Johnson died and W. S. Thomas, administrator *de bonis non* of Gilmore, was made a party. Among other matters the defendants pleaded the Statute of limitations of ten years. The suit was commenced on the 2d December, 1852, after the sale of the land to Alexander, but before the payment of the purchase money. The judgment was for defendants and a motion for a new trial being overruled the plaintiff appealed and assigns error :

1st. On overruling motion for a new trial.

2nd. On the instructions of the Court to the jury.

3rd. In giving instructions asked by defendant.

4th. For refusing to give the second and third instructions asked by the plaintiff.

5th. The verdict was contrary to the law and evidence.

These grounds are not discussed by counsel in the order of their assignment. The point first noticed by them is, that the verdict is contrary to the evidence ; and this assignment we believe to be well taken. The evidence of the witness Stewart is positive as to the statements of Gilmore, acknowledging that he had been trying to sell the land and was anxious to do so on Oliver's account ; that Oliver was the owner of the one half of the land ; that the certificate was purchased by him with Oliver's means ; and the deed taken in his own (Gilmore's) name ; that he was to have one half for his trouble in purchasing, having the same located, surveyed &c. ; that if he could not sell the land and pay Oliver the one half of the proceeds, he would make Oliver a deed to the undivided half of the land. These admissions were made in 1848. The rule is well established, that the unassisted oath of a single witness to the mere naked declaration of the trustee admitting the trust, will not, without corroborating circumstances, be sufficient to establish the trust. (Neill v. Keese, 5 Tex. R. 23 ; Lench v. Lench, 10 Ves. 511 ; 1 Johns. Chan. 582 ; 9 Tex. R. 482.) But the testimony of Stewart as to the admissions of Gilmore is not the only evidence. It is corroborated by the deposition of Cooper, who swears that he sold his headright in 1837 to a man named Gilmore or Gibbo, not certain about the name, but thinks it was Gilmore, who was merchandizing in the town of Matagorda ; that he was a partner of a man about whose name he was not certain, but thinks it was a Doctor Olford or Alford, a Dentist ; that the man who bought stated that he was purchasing it jointly with his partner, although (as the witness believed) the transfer was made to the one who purchased. The deposition of Wm. F. Oliver, who sold to the plaintiff, but executed only a quit claim title, confirmed substantially the admissions of Gilmore and the evidence of Cooper, in the essential particular that they had a joint interest in the land, though the assignment or transfer was made to Gilmore alone. The

evidence of this witness was competent ; its credibility was for the jury. Had it varied from the admissions of Gilmore it would have been entitled to but little weight ; but agreeing in substance with the evidence of Cooper and Stewart, it went in corroboration of their statements, and as such deserved some consideration.

The evidence of Stewart would alone have been sufficient, were it not for the rule of policy, which excludes parol trusts from being set up to defeat a paper title, on the unsupported testimony of a single witness. But his evidence was corroborated, and there being no rebutting testimony, the evidence was fully sufficient to have authorized a verdict for the plaintiff.

The Court was requested by the plaintiff to instruct the jury, that the Statute of frauds could not affect any contract that was made before it was in force viz : on the 16th March, 1840 ; and also that it had no application to the suit at bar. These instuctions were refused and this might have been very proper, at least not objectionable, had equivalent instructions been embraced in the general charge, or had no reference been made to the Statute, in the charge, or had principles of law not been given to the jury and which are found only in the Statute. In the general charge the jury are instructed that if they believe the agreement purporting to have been entered into between Gilmore and Oliver was not to be performed within one year from the date of the agreement, they should find for the defendant. This is not a general principle of law, but a rule established by the Statute of frauds. Whether a contract of this character, even if made after 1840 could be brought within the scope of the rule in relation to performance within the year, will not be discussed ; at least it is very questionable. But the Statute is altogether inapplicable to the agreement. It was subsequent in date and cannot affect contracts prior to its passage. There was error therefore in the refusal of the second and third instructions sought by defendant, and in the sixth paragraph of the charge of the Court.

This was not a proper case for the application of the doctrine that Courts of equity will not give their aid to enforce stale claims or demands. The date of the agreement, viz ; 1837, is not a material circumstance. No partition could be made of the land until after the issue of the patent in 1847, and no action could have been sustained, at least it could not have been properly brought, until after that date. Gilmore did not, in his life time, repudiate the agreement. On the contrary it was acknowledged by him in the most ample terms. The adverse claim may perhaps date its origin from the filing of the inventory by the executor, if any was filed ; but the first act in the record, denoting hostility, is the sale of the land to Alexander. And suit by the plaintiff was within less than twelve months from the date of the sale. No doubt lapse of time, if sufficiently long continued, would of itself exclude claimants under parol or resulting trusts, from the aid of Courts to enforce their claims. In this case lapse of time did not commence until after the issue of the patent. It was in accordance with the stipulations, that this should issue in the name of Gilmore alone, and the time which expired before suit, even if estimated from the date of the patent, being barely five years, would not suffice to raise the imputation of gross negligence or laches on the part of a plaintiff who has advanced the whole of the purchase money and performed every condition that was incumbent on him by the agreement. No precise term has been fixed within which a claimant under resulting trust must apply for specific performance. In the well considered case of Strimpfler v. Roberts, 18 Penn. State Rep., 6 Harris p. 283, it was held that a trust of lands existing in parol would be taken to be extinguished within twenty one years in anaology to the provision of the Pennsylvania Statute of limitations, which barred the right of entry into lands after the lapse of twenty one years. The case was one where the alleged trust was proved by the naked and solitary fact of the payment of the purchase money, the *cestui que trust* not having ex-

ercised any acts of ownership over the land.  By anology the
limitation against such trust would be ten years in this State.
But it is not necessary in this case to establish any rule, or in-
voke the aid of any which may be regarded as deducible from
our former decisions.  The period which has elapsed is too
short to bring it within any rule referred to in previous decis-
ions, or to make it necessary to examine minutely the doctrines
upon which limitation or prescription in such cases in other
Courts has been established.  The claim cannot be regarded
as stale, and we are of opinion that the judgment is erroneous
and that the same should be reversed and the cause remanded.

Reversed and remanded.