### A. H. HUTCHINGS V. MONTGOMERY SLEMONS.

No. 8104. Decided October 6, 1943.
174 S. W., 2d Series, 487.)

*W. H. Russell,* of Hereford, for petitioner.

The Court of Civil Appeals erred in holding that Article 6573a, section 22, known as the Real Estate Dealers License Act, requiring the appointment of real estate broker to be in writing was applicable to a contract of agency for the sale of land, entered into prior to the passage of such act, because the sale of said land was not concluded until after the passage of the act. Kenner v. Cleveland, 250 S. W. 151; Gravies v. Baines, 14 S. W. 256; Schwabe v. Kemp & Caldwell, 20 S. W. (2d) 273; 7 Tex. Jur. 477; 4 R. C. L. 320.

*Cowsert & Cowsert* and *Ray Cowsert,* of Dimmitt, for respondent.

The action being based on an oral contract which did not accrue and become a vested right until long after the effective date of the statute, was void. Landis v. Fuqua, 159 S. W. (2d) 228; Williams v. City of Galveston, 90 S. W. 505; Wirts v. Nestos, 51 North Dakota 603, 200 N. W. 524.

MR. JUDGE SLATTON, of the Commission, delivered the opinion for the Court.

Slemons, on June 1, 1939, listed two tracts of land with Hutchings for sale on terms suitable to the owner, and orally promised to pay the broker a five per cent. commission, amounting to $1,649.13. On said date Hutchings informed Slemons that he had a prospective purchaser for the lands in the person of M. L. Johnson. Immediately thereafter Hutchings communicated with the prospective purchaser by letter, giving him a descrip-

tion and price of the lands, and so notified the owner Slemons. Thereafter Johnson, the prospect, came to Castro County and began negotiations for the purchase of said land with the owner, Slemons. The negotiations began in the early part of July, 1939, and continued from time to time until on or about August 17, 1940, when the parties, i. e., Slemons and Johnson, entered into a contract for the sale and purchase of said lands upon the terms listed with the broker. The contract of sale was fully consummated on or about January 18, 1941.

Suit was filed on August 13, 1941, against Slemons to recover the broker's commission. Slemons specially excepted to the suit of the broker because of Section 22 of Article 6573a, which law became effective on September 20, 1939. The trial court overrulled the special exception. A jury answered special issues in favor of the broker. Upon that verdict judgment was rendered against Slemons for $1,649.13, together with interest and costs. On appeal, without a statement of facts, the Honorable Court of Civil Appeals at Amarillo reversed and rendered the judgment in favor of Slemons. 169 S. W. (2d) 226.

Section 22 of Article 6573a, Vernon's Annotated Civil Statutes, known as the Real Estate Dealers License Act, which law became effective September 20, 1939, is as follows:

"Sec. 22. No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereto lawfully authorized. This provision shall not apply to any action for commissions pending in any court in this State at the effective date of this Act. Acts 1939, 46th Leg., p. 560."

This law has been before the courts in the following reported cases: Walker v. Keeling, 160 S. W. (2d) 310; Landis et al v. W. H. Fuqua, Inc., 159 S. W. (2d) 228, (application for writ of error refused); Purser v. Pool, 145 S. W. (2d) 942 (no action); Goen v. Hamilton, 159 S. W. (2d) 231.

The precise question to be decided in the present case is practically the same as was decided in Purser's case. It was definnitely held in the Purser case, by the Eastland Court of Civil Appeals, that Section 22 of Article 6573a "was not intended to operate retrospectively * * *. But (2) if such con-

struction is required, that sections 13 and 22 are void, insofar as they affect the obligations of contracts made prior to" the effective date of the act because violative of Article 1, Section 16, of the Constitution of Texas.

The contract in Purser's câse was oral, made in May, 1938, and the sale was consummated on August 9, 1939, before the effective date of the act; while in the present case the broker's contract was oral, made on June 1, 1939, (more than three months before the effective date of the act) but the sale of the land was not finally consummated until some sixteen months after the effective date of the act.

■ The Honorable Court of Civil Appeals in the present case entertained the opinion that the oral contract of listing between the owner of the land and the broker was a unilateral contract at the effective date of the quoted section of the act; hence, no vested rights had accrued to the broker. It is true that a broker is not entitled to a commission until he has procured a purchaser ready, able and willing to buy the listed property upon terms stipulated by the owner of the land. Hamburger & Dreyling v. Thomas, 103 Texas 280, 126 S. W. 561. It is also true that a broker is entitled to recover a commission:

"* * * when he has found or procured, or if he has introduced or given the name of a purchaser who is ready, able and willing to purchase the property upon the terms named by the principal, and the principal has entered into negotiations with such purchaser and concluded a sale with him. 4 R. C. L., p. 320." (Quoted in Keener v. Cleveland et al, 250 S. W. 151.)

■ The fact that the owner himself has negotiated the sale does not prevent the broker from being regarded in law as the procuring cause of the transaction. 7 Tex. Jur., p. 477, 80. Goodwin v. Gunter, 109 Texas 56, 195 S. W. 848.

■ The oral contract was made on June 1, 1939. The owner of the land listed it with the broker upon terms acceptable to him, and orally promised the broker to pay him a five per cent. commission. There was no time limit specified in the oral contract. Immediately thereafter the broker communicated with the prospect and so advised the owner. As a result, the prospect and the owner began negotiations in the early part of July, 1939 (before the effective date of the act) which culminated in a sale of the land upon terms specified by the owner in his listing with the broker. Under these circumstances we are of the

opinion that at and before the effective date of the legislative enactment the oral contract between the broker and the land owner was more than unilateral. In fact, at that time the contract was clearly bilatertal. American Law Institute, Restatement Contracts, p. 10, sec. 12, says:

"A bilateral contract is one in which there are mutual promises between two parties to the contract, each party being both a promissor and a promisee."

The land owner (before the effective date of the act) says to the broker: "If you will sell my lands upon terms specified within a reasonable time I will pay you a five per cent. commission." The broker says to the owner: "I will use reasonable diligence to sell your lands upon the terms specified by you within a reasonable time, for a five per cent. commission." Thus it is clear that each party is both a promisor and a promisee.

"Though a contract be void for lack of mutuality at the time it is made, and while it remains wholly executory, yet, when there has been even a part performance by the party seeking to enforce the same, and in such part performance such party has rendered services or incurred expense contemplated by the parties at the time such contract was made, which confers even a remote benefit on the other party thereto, such benefit will constitute an equitable consideration, and render the entire contract valid and enforceable." Big Four Ice & Cold Storage Co. v. Williams, 9 S. W. (2d) 177 (writ refused).

"The test of mutuality is to be applied, not as of the time when the promises are made, but as of the time when one or the other is sought to be enforced." (Quoted from Edwards v. Roberts, 209 S. W. 247, 251, 212 S. W. 673 (writ refused) in the Big Four Ice & Cold Storage Company case).

■ What were the rights of the parties to this contract at the time it was made and before the effective date of the legislative enactment pleaded by special exception in bar of a recovery in this suit? There was no law requiring the appointment of a broker to be in writing. Daugherty v. Smith, 192 S. W. 1131 (writ refused) ; Fordtran v. Stowers, 113 S. W. 631 (writ refused). Hence a recovery could be had upon an oral contract and the oral contract in suit was valid when made.

The section of the statute above quoted does not in terms condemn an oral contract to pay a commission for the sale of real estate, but provides that "no action shall be brought in

any of the courts in this state" etc., "upon an oral contract to pay a commission for the sale of real estate." The section of the statute is in effect an addition to our Statutes of Frauds, Article 3995. The Statute of Frauds (including the section in review) does not render void or illegal a promise or contract within its terms. 20 Tex. Jur., p. 211, sec. 3; Robb v. San Antonio St. Ry. Co., 82 Texas 392, 18 S. W. 707. The statutes establish a rule of evidence. Authorities, supra.

In the early case of Galen Hodges v. Moses Johnson et al, 15 Texas 570, it was ruled that the Statute of Frauds of 1840 had no application to contracts made before its passage.

Retroactive statutes are generally regarded with disfavor. This is particularly true in this State because of Section 16 of Article 1 of the State Constitution, in addition to appropriate provision of the Federal Constitution. In Chew Heong v. United States, 112 U. S. 536, 5 S. Ct. 255, 28 L. Ed. 770, the Supreme Court of the United States say:

"Courts uniformly refuse to give to statutes a retrospective operation, whereby rights previously vested are injuriously affected, unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the Legislature."

It is true that the last sentence of the above quoted section of the act provides in effect that this section shall not apply to "any action * * * pending in any court" at the effective date of this act, but in our opinion the entire act does not in clear and positive language evidence an intention that the act or any part of it should operate retrospectively. Popham v. Patterson, 121 Texas 615, 51 S. W. (2d) 680.

At the time the oral contract was made the same was valid and recovery could be had thereon. Article 1, Section 16 of the Constitution prohibits the passage of retroactive laws or any laws impairing the obligation of contracts. In the case of United States ex rel Hoffman v. Quincy, 18 L. Ed. 535, the court say:

"A statute of frauds embracing a pre-existing parol contract not before required to be in writing would affect its validity."

In the case of Langever v. Miller, 124 Texas 80, 76 S. W. (2d) 1025, this court, quoting from the Von Hoffman case, supra, said:

"It is also the settled doctrine of this court, that the laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. *This rule embraces alike those which affect its validity, construction, discharge, and enforcement.*"

And in the same case, this court quoted from the case of Walker v. Whitehead, 16 Wall. (83 U. S.) 314, 317, as follows:

"Nothing is more material to the obligation of a contract than the means of its enforcement. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the Constitution against impairment; the obligation of a contract 'is the law which binds the parties to perform their agreement'; * * *

"The States may change the remedy, *provided no substantial right secured by the contract is impaired.* Whenever such a result is produced by the act in question, to that extent it is void." (Italics ours).

What better way could the oral contract be destroyed than by forbidding suits to be brought thereon? The section of the statute, if construed like similar statutes, which we must, provides a rule of evidence, thus being remedial in nature; but to apply the statute retroactively and give it effect with respect to the oral contract in suit would, in our opinion, "affect its validity." Quoting again from the Langever case:

"The legislature may change judicial methods and remedies for the enforcement of contracts. * * *

"We are of the opinion that when a legislative act pertaining to the judicial enforcement of contract rights reaches the point where its effect is to impair the obligation of contracts, it is void."

It requires no discussion to show that to deny the broker the right to file suit and to offer evidence of his valid parol contract through remedial legislation is to destroy the very contract which was valid and binding at the time it was made. This, in our opinion, is condemned by the Constitution.

It follows from what we have said that in our opinion the legislature did not intend the act in question to operate retroactively and that said act has no application to the oral contract

in suit. But, if such a construction is required, the act in question is void in so far as it operates upon contracts made prior to the effective date of the act because violative of Article 1, Section 16 of the Constitution of Texas.

In deference to the well considered opinion of the Honorable Court of Civil Appeals holding to the contrary, we deem it expedient to say that the court followed persuasive authorities from jurisdictions. We have considered the authorities cited by the Court of Civil Appeals in support of its opinion and conclude both upon principle and authority that the rules announced herein are the better view.

Accordingly, the judgment of the Court of Civil Appeals is reversed, the judgment of the trial court is affirmed, with costs of all courts adjudged against respondent.

Opinion adopted by the Supreme Court October 6, 1943.