## NORLEY FARMS, Inc., v. MOORE et al.
### No. 5724.

Court of Civil Appeals of Texas. Amarillo.

Nov. 4, 1946.

Rehearing Denied Dec. 9, 1946.

Sam Holland, of Athens, and John A. Erhard, of Dallas, for appellant.

Hassell & Hassell, of Dallas, for appellees.

PITTS, Chief Justice.

This is a brokerage suit in which appellees, W. S. Moore, Ben F. Smith, Ralph A. Porter, and Susie S. Pace, a feme sole, licensed brokers, filed suit against appellant, Norley Farms, Inc., for a brokerage commission for the sale of a farm situated in Dallas County and made J. B. Sneed, the purchaser, a party defendant to the suit. Before the trial J. B. Sneed's plea in abatement was sustained by the trial court and he was dismissed from the suit.

Appellant defended on the ground that the listing and contract for commission were oral and that a suit to enforce the same is prohibited by the provisions of Section 22 of Article 6573a, Vernon's Annotated Civil Statutes, and it likewise pleaded two years statute of limitation.

The case was heard by the trial court without a jury and a judgment was rendered for appellees for a commission in the sum of $1559.22 with interest thereon from November 1, 1944, from which judgment appellant perfected an appeal to the Court of Civil Appeals of the Fifth Supreme Judicial District at Dallas and the same was transferred to this Court by the Supreme Court of Texas.

Appellant contends in its first point of error that an oral listing of land in 1938 will not support a recovery for a broker's commission where the negotiations resulting in the sale were not begun with the purchaser until August, 1942, because of the provisions of Section 22 of Article 6573a which provides that all agreements for the payment of such commission must be in writing.

The record reveals that at some time in July, 1938, appellee, W. S. Moore, entered into an oral agreement with J. D.

138

Hensley, vice president and agent of appellant, Norley Farms, Inc., to sell the land in question for appellant and an agreement was reached between them that a commission of five per cent would be paid Moore for his services; that Moore began immediately and continued actively in the service of the seller who actively supported and encouraged the efforts of the broker until a purchaser was found; that the other named appellees became associated with Moore some time after the listing and helped to make the sale of the said land; that appellees found J. B. Sneed and wife, Laura Sneed, as purchasers of the land and helped them to contact J. D. Hensley for negotiating the sale; that on August 20, 1942, Hensley, acting for Norley Farms, Inc., entered into a contract with J. B. Sneed and wife, Laura Sneed, which contract is denominated a "Lease and Optional Sales Contract" and in which Norley Farms, Inc., is referred to as "lessor or seller" and J. B. Sneed and wife, Laura Sneed, are referred to as "lessees or purchasers." The terms of the contract provide that the land in question shall be leased to Sneed and wife for a term beginning August 20, 1942, and terminating November 15, 1944, at a rental value of $300 per month payable monthly; that lessees were to place certain improvements on the land not to be removed at the expiration of the lease, and lessees were to be liable for loss or damage to all improvements due to fire, windstorms, or hail during the lease period but they would not be required to reimburse lessor unless such loss or losses were due to lessees' wrongs; that lessees were to have an option to purchase the land in question, the same to be exercised at any time during the lease period, provided they had not defaulted in any of the terms of the contract; that in case of sale a survey should be made of the land to determine the number of acres and the purchase price of the same should be $45 per acre; that the seller would pay all taxes due prior to November 1, 1942, and the purchasers would pay all taxes accruing thereafter but, in case Sneeds exercised their option to purchase the land, all taxes paid by them and all rentals paid by them prior to the date of purchase together with

four per cent interest thereon for such a period should be a part of the consideration of sale and should be credited and included in the purchase price of the land; that the purchasers should not be entitled to a deed of conveyance until a total of $8000 had been paid to seller either in $300 monthly rental values or in cash or both which sum should be credited as a part of the purchase consideration. The contract then contains the following two paragraphs:

"The balance of the consideration after the payment of said $8,000.00 plus interest shall be represented by one note in the amount of $15,000.00, payable on or before ten years after date, and by five equal notes payable on or before one, two, three, four, five years after the date. All unpaid purchase price, as shown by notes herein provided, shall bear interest at the rate of 4% per annum, beginning November 1, 1942, and such interest shall be paid annually on November 1st of each year after the date of each of said notes. * * *

"In consideration of the seller agreeing to deduct the amount of five per cent commission on the purchase price of the property herein described, if and when option of purchase is exercised, and consummated by the purchasers under the terms of this contract, the said purchasers hereby agree to hold the sller harmless by reason of any and all claims for payment of a five per cent or less commission that may at any time be made by Moore, Smith, or Pace, or anyone claiming under them for the payment of any such commission, and the purchasers will defenda at their own expense any suit, or suits brought therefor, and pay off any final judgment obtained by any of the above named against the seller."

The record reveals that Moore told Hensley soon after the written contract was entered into that he was not looking to Sneed for his commission on any sale made but that he was looking to Norley Farms, Inc., for such commission. The record further reveals that Sneeds paid to appellant the $300 monthly rentals until on or about October 30, 1944, when the total rental payments then amounted to $7800 and on or about the said date J. B. Sneed

delivered to appellant a check for $200 making a total of $8000 paid to appellant as seller and on November 1, 1944, J. B. Sneed advised appellant that he desired to exercise the option of purchase of the land and to have an adjustment made of the rentals and taxes paid by him and the interest thereon which were to be credited as a part of the purchase price of the land. The record further reveals that immediately thereafter a controversy arose between the seller and the purchasers and Norley Farms, Inc. filed a suit against J. B. Sneed and wife in the 44th Judicial District of Dallas County asking for a declaratory judgment construing the terms of the contract here involved and almost simultaneously therewith J. B. Sneed and wife filed a suit against Norley Farms, Inc., in the 68th Judicial District of Dallas County asking for specific performance of the said contract; that some time thereafter the said parties compromised their differences and dismissed their respective law suits but the parties to the aforesaid suits all recognized the claims of appellees in this suit for the brokerage commission on the sale made and in compromising their differences; that J. B. Sneed, on April 7, 1945, deposited, as a part of their settlement agreement, the sum of $1500 in the Mercantile National Bank at Dallas to be used to pay off any judgment appellees may procure for such brokerage commission and to indemnify appellant against having to pay the same and that such deposit was still in escrow. Hensley testified that the sale had been consummated and the consideration had been paid; that appellees were entitled to a commission and he had written Moore a letter stating that such commission would be paid as soon as the transaction was closed but that he had not paid appellees anything.

Section 22, Article 6573a, Vernon's Annotated Civil Statutes, was passed by the State Legislature after the oral contract between the parties in this case was made and the same became effective on September 20, 1939, some fourteen months after the oral contract was made. The act prohibits the recovery of the commission in such cases unless the contract has been made in writing or some memorandum thereof made and properly signed by the party charged therewith or his representative. However, the Commission of Appeals held in Hutchings v. Slemons, 141 Tex. 448, 174 S.W.2d 487, 148 A.L.R. 1320, that the act in question did not preclude a recovery of a brokerage commission in a similar case where an oral contract for such commission was made some three months before the effective date of the act and the sale of the land was not consummated until some sixteen months after the effective date of the act. The court there cites numerous authorities which we here cite also without copying at length from the said opinion. In that case the court held that a valid oral contract made between the seller and the broker before the act became effective was valid even though the contract of sale was not consummated until after the act became effective and the said act was not retroactive and would not preclude a recovery of the commission.

In the instant case it is admitted by all parties that a definite oral contract was made between the seller and the broker in July, 1938, and a five per cent commission for the broker was agreed upon; that the broker began immediately to find a purchaser, interviewed many prospects and continued in the service of the seller who actively supported and encouraged his efforts continuously until a purchaser was found and that the seller and broker worked together in the matter for fourteen months after the oral agreement was made and before the effective date of the act.

In the Hutchings-Slemons case the oral contract was made more than three months before the act became effective while in this case the oral contract was made long before the act was passed and fourteen months before it became effective; in that case a purchaser was found before the act became effective but the sale was not consummated for sixteen months after the act became effective while in this case the act became effective before a purchaser was found and the sale consummated. But under the logical reasoning stated by the court in the Hutchings-Slemons case we do not consider the differences in the two cases material. In that case the court holds that at the time the oral contract was

made, "There was no law requiring the appointment of a broker to be in writing. Daugherty v. Smith, Tex.Civ.App., 192 S. W. 1131, writ refused; Fordtran v. Stowers, 52 Tex.Civ.App. 226, 113 S.W. 631, writ refused. Hence a recovery could be had upon an oral contract and the oral contract in suit was valid when made." The same line of reasoning applies to this case.

For the reasons stated above and under the authorities cited, appellant's first point of error is overruled.

■■ In its second point of error appellant contends that the two year statute of limitation precludes a recovery of the commission. The rule is well established that the broker must find a purchaser ready, willing, and able to purchase the listed land before he is entitled to his commission. The record reveals that although Sneeds may have been able at all times to purchase the land yet they were not ready and willing to purchase the same until they exercised their option on November 1, 1944. Since the judgment of the trial court provides for interest to begin on November 1, 1944, it is presumed it found that the sale of the land was made on November 1, 1944, and that the commission became due on that date and bore interest thereafter. The contract makes references to the five per cent commission due "if and when option of purchase is exercised, and consummated by the purchasers under the terms of this contract. * * *" The record reflects that all parties have recognized November 1, 1944, as the date of sale. The record therefore fully supports the findings of the trial court. The suit was filed on February 9, 1945, less than four months after the sale was made. We therefore overrule appellant's second point of error.

Appellant complains in its third point of error that the consideration was $23,184.42 rather than $31,184.42 and the commission, if any, should have been only $1159.23 and not $1559.22.

■ The contract provides for a consideration of $45. per acre with the rental payments and taxes paid by purchaser together with the interest thereon all to be added thereto as a part of the purchase price. It further provides that if the lessees exercise their option to buy, a surveyor would be employed to determine the number of acres in the tract of land but the record reveals that the parties never had it surveyed. J. D. Hensley testified that the sales consideration was $8000 plus $20,500 plus $2800, making a total of $31,300. J. B. Sneed testified that the consideration was $2684.42 cash plus $20,500 in notes making a total of $23,184.42. He further testified that the $8000 he had paid to Hensley was "carrying charge" only, but the trial court did not find the $8000 to be a carrying charge but it found that such sum was a part of the consideration. From the commission fixed by the trial court it is presumed that it found the consideration to be $31,184.40 and it allowed a commission on the figures fixed by J. B. Sneed as a total of $31,184.40 rather than the total consideration of $31,300 fixed by J. D. Hensley.

The evidence supports the findings of the trial court and appellant's third point of error is therefore overruled.

A careful examination of the record reveals that all assignments of error should be overruled and the judgment of the trial court is therefore affirmed.