Steve **PAPPAS** et ux., Appellants,

v.

John G. **GOUNARIS** et al., Appellees.

No. 12872.

Court of Civil Appeals of Texas.

Galveston.

March 28, 1957.

Appellants' Motion for Rehearing and to Certify Questions Denied April 18, 1957.

Ansel M. Kahn, Houston, for appellants.

Merrill & Scott and Sam R. Merrill, Houston, for appellee John G. Gounaris.

CODY, Justice.

Hereafter Steve Pappas and wife, who are appellants in this case, will sometimes be referred to as Pappas; John G. Gounaris, who instituted this suit, will be called Gounaris; and Alex Bell, who is also an appellee here, will be called Bell.

Gounaris brought this suit against Pappas on a promissory note for the principal sum of $13,000 dated November 7, 1945, which was executed by Pappas, without joinder of his wife, and made payable to the order of Bell five years after date, and which was purportedly secured by a deed of trust lien of even date executed by Pappas. The suit was also brought to foreclose on the lien as against Bell, who had endorsed and guaranteed the payment of said note to Gounaris. Bell assigned the note and lien to Gounaris on March 7, 1947. Appearing as an integral part of such written transfer Pappas stated therein that no payment had been made on the note, and further that said note is a binding obligation and that "I am the true and legal owner of the property upon which said lien was given to secure the payment of said note." Gounaris brought in usual form a suit to collect what was then due on the note from both Pappas and Bell and to foreclose the lien purported to be on the land in controversy. Mrs. Pappas was not a party to any of the instruments involved in this suit. The principal defense of Pappas on appeal

was that the property in controversy was the business homestead of himself and wife and had been such since 1942 and remained such at the time of the trial.

The case was submitted to the jury on special issues, and because this appeal is largely based on the issues we set them forth at this point in the opinion together with the answers made thereto:

### Special Issue No. 1

"Do you find from a preponderance of the evidence that the $13,000.00 note dated November 7, 1945, was not executed in payment of an indebtedness owing by Steve Pappas to Alex Bell?

"Answer 'It was not' or 'It was'.

"If you have answered Special Issue No. 1 'It was not', and only in that event, then answer [Special Issue No. 2]."

The jury answered Special Issue No. 1, "It was."

### Special Issue No. 3

"Do you find from a preponderance of the evidence that the property in question, to-wit, Lot 3, Block 1, Section 2, Harbordale Subdivision, also known as 8109 Market Street Road, was on November 7, 1945, at the time the deed of trust was executed by Steve Pappas, the business homestead of the defendant Steve Pappas?

"Answer 'We do' or 'We do not'.

"By the term 'business homestead', as used in the foregoing special issue, is meant a lot or lots or parcel or parcels of land occupied and enjoyed by the head of a family for the purpose of conducting his principal calling, business, occupation or employment."

The jury answered Special Issue No. 3, "We do."

### Special Issue No. 4

"Do you find from a preponderance of the evidence that on or about May 7, 1946, after default had been made in the payment of the interest on the $13,000.00 note sued upon, Alex Bell demanded the immediate payment of said note in full?

"Answer 'We do' or 'We do not'."

The jury answered Special Issue No. 4, "We do not."

### Special Issue No. 5

"Do you find from a preponderance of the evidence that the defendants, Alex Bell and Steve Pappas, prior to the erection of the building at 8109 Market Street Road had an agreement to become partners, by the terms of which the defendant Steve Pappas would contribute the lot upon which a proposed building was to be erected and the defendant Alex Bell would furnish the funds with which to procure the erection thereof, the profits and losses arising from any business conducted in said building to be divided equally between Pappas and Bell?

"Answer 'We do' or 'We do not'.

"If you have answered Special Issue No. 5 'We do', and only in that event, then answer [Special Issue No. 6]."

The jury answered Special Issue No. 5, "We do."

### Special Issue No. 6

"Do you find from a preponderance of the evidence that the defendant Steve Pappas and the defendant Alex Bell dissolved their partnership by agreement, by the terms of which the defendant Alex Bell was to have the note and deed of trust and the defendant Steve Pappas would have the land as so improved subject to such note and deed of trust?

"Answer 'We do' or 'We do not'."

The jury answered Special Issue No. 6, "We do."

Pappas leveled many objections to the court's charge. Gounaris and Bell made no objections thereto.

Pappas moved for a judgment on the verdict, and in effect moved that the an-

swers of the jury to Special Issues Nos. 5 and 6 be disregarded. Gounaris moved that the answer to Special Issue No. 3 be disregarded and that he have judgment against Pappas for the amount of the note and for foreclosure of the lien, and moved for a joint and several judgment against Bell on his endorsement and guarantee of the payment of the note. The court granted Gounaris' motion and rendered a joint and several judgment against Pappas and Bell for the amount then due on the note, and a foreclosure of the lien, and that if Bell was compelled to pay anything that he should have recovery over against Pappas for such sum or sums.

On appeal Pappas does not complain of the judgment rendered against him on the note in any respect, but complains only of the judgment foreclosing the lien. Only Pappas has appealed, and only he and Gounaris have filed briefs on this appeal, though Bell filed an answer in the trial court.

▮ Pappas has predicated his appeal upon 19 so-called points. Having violated the briefing rules which require him to state his points so concisely as to get them on one page of his brief—Rule 418(b), Texas Rules of Civil Procedure,—we cannot set out his "points of error." He himself groups his points Nos. 1 to 7, inclusive, for presentation together as they all relate to the question of business homestead. He undertakes to show that he placed a frame building on the lot in question not later than the early part of 1943 and has maintained it as his business homestead from that date until the time of the trial. He offered some witnesses who supported this contention, but Bell flatly denied that the frame building was on the lot in question and that he and Pappas agreed that they were partners in everything at the time they made such agreement, and he directly controverted the statement that the frame building was on the same lot as the brick . building which was erected, and at the time they made the partnership agreement. Bell testified that Pappas said, "We are now partners in everything," meaning in the land on which the brick building was erected and in the $13,000 contributed to the partnership by Bell. Pappas further claimed that the lien to secure the $13,000 was void on the account of the statute of frauds, Article 3995, Sec. 4, Vernon's Ann. Tex.Civ.St. and because of the Texas Trust Act, Article 7425b-7, which requires express trusts to be in writing.

Pappas contended under his points Nos. 1 to 7, inclusive, that even assuming that the property in question was business assets of the partnership, it was not subject to foreclosure because Pappas was entitled to urge his homestead exemption and the agreement, not being in writing, is illegal and void and in violation of the statute of frauds and of the Texas Trust Act cited above.

The jury found that the property was business homestead of Pappas at the time the note and lien were executed, but Gounaris complains that there was no finding and none requested by Pappas as to whether the property was business homestead at the time the partnership agreement was entered into. Gounaris claims that had Pappas submitted such issue to the jury and gotten a favorable answer, it would have greatly weakened his position taken in the trial court that there was no consideration given for the note and that no partnership ever existed. Gounaris asserts that Pappas relied upon his claim in the court below that there was no consideration given for the note, that no partnership ever existed, and that at the time the note and deed of trust were executed the property was his business homestead, and that after Pappas had elected to defend only on the ground that the property was his business homestead when the note and deed of trust were executed pursuant to the partnership agreement, he may not now complain that on the face of the record he was not found to have a homestead claim at the time of the partnership agreement.

Gounaris asserts that Pappas waived that issue by not having requested it and that the court was authorized to find such issue so as to support the judgment.—In other words, it suited Pappas' purpose to defend the case on one ground in the trial court and then if he lost on that ground to rely upon an issue which was decisive but which he did not have submitted to the jury and it being a decisive issue.

 It is generally true that under Rules 277 and 279, T.R.C.P., the court may make subsidiary findings of fact to support the judgment where they were not submitted by the parties. In this case the court evidently made a subsidiary finding to support the judgment, since said issue was not requested by Pappas. So we must take it that the court's subsidiary finding, when the issue referred to was not submitted by Pappas, was that the lot was not homestead property at the time the partnership was entered into. In other words, Pappas could run his risk of not submitting the appropriate issue to the jury and rely upon the defense of no consideration and no partnership in the trial court, but he is bound by the finding of the court on an issue which was his and which was waived.

It is proper to state at this point that Pappas offered evidence which showed that he had entered into the possession of the frame building in the latter part of 1942 or the early part of 1943, and it would have been appropriate if Pappas had not waived the decisive issue for him to have submitted it rather than to rely completely on the defense of no consideration and no partnership agreement in the trial court and then undertake to make the finding fit an issue which he waived in the trial court by not requesting it.

Pappas urges that assuming the property was not homestead when it was dedicated to the partnership, a partner can claim a homestead exemption in respect to partnership property. Cooper Co. v. Werner, Tex.Civ.App., 111 S.W.2d 823; Inman v. Inman, Tex.Civ.App., 80 S.W.

2d 1103; and 40 C.J.S., Homesteads, § 89, pp. 528, 529, stating that in Texas a partner can claim a homestead exemption if at the time the partnership is solvent, and "A partner's individual homestead, acquired during the existence of the partnership, cannot be subjected either to the partnership debts or to his indebtedness to the partnership or to his copartners." Proof was submitted by Pappas that business was carried on by him in the frame building not later than early 1943, as stated above, but it was controverted by Bell, as stated above, that the lot on which the brick building was erected was the same lot on which the frame building had been situated. Pappas and his witnesses testified that the frame building faced upon and was located near Market Street and that the number it bore was 8109 Market Street Road and that that is the same number that the brick building bears.

Bell testified, as stated above, that the brick building is not on the same lot that the frame building was on.

 There is no doubt under the finding of the jury that the partners became partners when the partnership agreement was made, and partnership is a fiduciary relationship and Pappas owed that finer standard of conduct required of fiduciaries in courts of equity than Pappas here made. He failed to disclose at the time he agreed to be partners in everything that he was claiming a business homestead in the property, as it was his duty in a court of equity to do. If he was going to claim his contribution to the partnership as his business homestead it was his duty to disclose this fact to Gounaris before Gounaris parted with his money. Under his course of action he undertakes to try to fix that Pappas could at any minute withdraw the $13,000 contribution and to keep it and that the parties were not entitled to distribute the assets of the partnership in accordance with the principles of the distribution of partnership assets. He could at any minute, according to his claim, have ousted Gounaris

and stripped him of $13,000. This is not the law. Pappas claims on the assumption that he could waive the submission of the decisive special issue and undertake to base his right to a judgment on the findings made by the jury to other special issues. His learned brief, studded with citations of cases which we think have no bearing, we do not think gets around his failure to submit the issue which we have held he waived. He did not have a finding that property was his homestead property at the time the parties agreed to be "partners in everything."

▇ In his second contention under his Points 1 to 7, inclusive, he invoked both the Statute of Frauds and the Texas Trust Act, and claimed that because of these statutes the property in controversy never constituted any part of the partnership assets. Pappas also claims that the property in controversy never constituted any part of the partnership assets. Pappas' contention is that the partnership agreement, not being in writing, is void under the Statute of Frauds. We do not find that this has ever been held as a matter of law, and on principle it should never be held.—That because it merely is held with respect to the Statute of Frauds that the agreement cannot be proved up in court, but it does not hold that the agreement is void. In other words, the most that ever happened is that so long as a contract remains unexecuted that it could not be proved up in court, but it does not hold that the agreement is void. It is well settled that such an agreement is valid but simply cannot be proved up in court. See Hutchings v. Slemons, 141 Tex. 448, 174 S. W.2d 487, 148 A.L.R. 1320; 20 Tex.Jur. 322, Sec. 3; Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397. That is to say that when the contract has become executed that it is not only valid but is enforceable because, it being executed it does not have to be proved up. The contention that the oral agreement to become partners in appellant's real estate was illegal and invalid from its inception is as untenable as that about the Statute of Frauds. In other words, after the contract has become executed it is too late to urge against an executed contract what might have been proper against an executory contract. We must hold that appellants were not entitled under the Texas Trust Act and the Statute of Frauds to argue that an executed contract is illegal. The Statute of Frauds does not apply to executed contracts and upon a final settlement of partnership affairs the execution of the note and deed of trust sued upon, the oral contract between appellees and appellant became a fully executed agreement, so that the question of whether the original contract was oral or in writing became wholly immaterial. This must be equally so with reference to the Texas Trust Act.

This is not a suit to establish an interest in land but is brought for the purpose of foreclosing a lien given upon the settlement of the business of the partnership.

▇ Upon the dissolution of the partnership Pappas elected to recognize the existence of Bell's interest in the land and to execute the note and deed of trust in settlement for his interest in the partnership, and when the note passed into the hands of an innocent purchaser for value Pappas ought not to be heard to question the validity of the transaction and the note having passed into the hands of an innocent purchaser for value Pappas ought not now to be heard to question the validity of the transaction. As stated above, the question of express trusts, like that of the Statute of Frauds, can have no application to an executed contract. Neither statute can be said to undo that which had already been done. The statute was made to prevent fraud, and equity will not permit it to be invoked when the result would be to perpetuate a fraud. Art. 7425b–7 does not apply to an executed contract. It should be remembered it is not a suit to establish an interest in the land, but is brought for the purpose of foreclosing

his lien given upon the settlement of the business of the partnership.

Pappas, having elected to recognize the existence of Bell's interest in the land and to execute the note and deed of trust in settlement for his interest in the partnership business, and that note having passed into the hands of an innocent purchaser, Pappas cannot be heard to question the validity of the transaction.

Appellant's points of error 8 to 19—under these points of error—since these each complain of the action of the trial court in submitting Special Issues 5 and 6 to the jury and the judgment rendered in response thereto, will be grouped and discussed together. In so far as Pappas' points of error are based upon the Statute of Frauds and the Texas Trust Act and the homestead claim of Pappas, what has been heretofore said applies. We think the other contentions may be summarized as follows: (1) that the issues submitted were without support either in the pleadings or in the evidence, (2) that the trial court erred in refusing to give in its charge to the jury explanatory instructions and definitions of the term "an agreement to become partners" as used in Special Issue No. 5, (3) that the trial court erred in refusing appellant's requested definition of the term "partnership" as used in No. 6, (4) that the jury should have been instructed that a community of profits and interest in profits is an essential element of a partnership or of an agreement to become partners. The special verdict is not sufficient to authorize the judgment rendered because Pappas failed to submit the issue which we have referred as decisive.

■ It appears that the partnership question about which complaint is here made was presented by the answer of appellee Bell. Pappas filed no exception to that portion of the pleading nor does the record disclose that any objections or exceptions thereto were presented to the court. But it is now too late to bring up

deficiencies in pleadings. Rules 67 and 90, T.R.C.P. Bell testified, "Me and Steve went together." When asked "What did Steve say to you?" he answered "To build a building for a business together. Everything we had, we are partners together. That is what he told me."

■ The special issues complained of were stated in the charge of the court set out in Special Issue No. 5 and Special Issue No. 6. Pappas requested the court to define "agreement to become partners" as used in Special Issue No. 5 and also required a definition of the term "partner" as used in Special Issue 6, and further requested a charge as to community profits being an essential. We think that under Rules 277 and 279, T.R.C.P., that the failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or explanation has been requested in writing and tendered by the party complaining of the judgment.

■ We agree with Gounaris that the charge as a whole properly submits the question of partnership in that an abstract definition would tend to confuse the jury, whereas the way the court handled it it is quite clear that the jury grasped what the meaning of "partnership" was and it would have confused the issue to have brought in an abstract definition of "partnership" as the issue was submitted carried its own definition of the term used. The charge defined the kind of agreement asked about in language involving everything requisite of a proper definition of the partnership relationship. So we come to this conclusion: that upon the failure of Pappas to submit the decisive issue that he was relying in the trial court on establishing one defense but when he lost—because had the jury found against him—He then undertook to fit in an answer given to other special issues upon which to hold Gounaris liable on the decisive special issue and which was not made, had not been

answered in response to his special issue, which we have called the decisive issue, having waived the submission of that issue in order to sustain a different defense, he cannot come in and because of the failure of the answer to the special issue which was submitted claim that it was sufficient to prove up the decisive issue. Having waived the submission of the issue, he thereby threw it into the power and duty of the court to make a subsidiary finding of fact as to the issue which he failed and refrained from making in the trial court. Because he chose to rely on a different defense from the one that he seeks to rely on which was made in response to other special issues, the court must be taken, as it was his duty to do, to have made a subsidiary finding that the issue was denied by the court, under rule 279, T.R.C.P. In other words, Pappas undertook to waive the issue below in the interest of relying upon a defense which he had plead but which he lost in the court below, and now he undertakes to state that the answers of the jury answered the submission of the issue which he failed to submit, and thus rely on one defense in the trial court and then when he lost on that defense undertook to pull answers of the jury to other issues. But to bring a halt to the matter, Pappas had no authority or right to undertake to have the issue which he waived the submission of now be answered as that it was actually answered by an issue which he waived the presentation of in the trial court. So we are compelled to find that the trial court decided the special issue which he waived the presentation of must be decided by a subsidiary finding.

We must sustain the finding by the court on the issue which plaintiff waived submitting at the time of the trial. We are bound by such finding of the trial court. There is no good purpose to be served by further prolonging the discussion of this case, either as to facts or law since the court found the issue which Pappas failed to submit in all things contrary to Pappas'

contention, and we, therefore, affirm the judgment of the trial court.

We will repeat, so as to put it beyond all question, that there was evidence that appellant was in a frame building on the lot in controversy, at least in early 1943, and that was the lot on which the building in controversy was situated, and that there had been no change, but this testimony was controverted by Bell who testified that at the time of the partnership agreement Steve Pappas said "We are partners in everything," and stated in effect that he was contributing the land and that Bell was contributing the $13,000, and since the partnership is a fiduciary relation he cannot be taken to have lied to his partner.

For the reasons given, we affirm the judgment of the court below.

Affirmed.

HAMBLEN, C. J., and GANNON, J., concur in the order of affirmance.