

Court Of Appeals

Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00549-CV

Lawrence Alexander **ZAMORA** d/b/a Southern Plumbing,
Appellant

v.

**THE MONEY BOX**,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Cause No. 335303
Honorable David Rodriguez, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:       Karen Angelini, Justice
               Sandee Bryan Marion, Justice
               Phylis J. Speedlin, Justice

Delivered and Filed:   July 15, 2009

AFFIRMED IN PART, REVERSED AND RENDERED IN PART

Lawrence Zamora d/b/a Southern Plumbing appeals from a summary judgment in favor of

The Money Box. In two points of error, Southern Plumbing contends the trial court erred in granting

summary judgment and awarding The Money Box attorney's fees. Because we conclude The Money

Box is not entitled to recover attorney's fees, we reverse that portion of the trial court's judgment;

however, we affirm the remainder of the trial court's judgment.

**BACKGROUND**

On October 30, 2006, Southern Plumbing issued a check for $288.00 to Robert Olivarez as an advance for work to be performed. Several hours later, Olivarez informed Southern Plumbing that he could not perform the work and he would destroy the check. Robert Zamora, on behalf of Southern Plumbing, told Olivarez he would place a stop-payment order on the check. However, Olivarez endorsed and cashed the check at The Money Box. When The Money Box presented the check to the bank for payment, the check was returned with the notation, "payment stopped." According to The Money Box, it notified Southern Plumbing by certified mail that the check had been returned, and that The Money Box expected payment of the check and a $20.00 returned check fee. The envelope, however, reflects the letter was "returned to sender, not deliverable as addressed, unable to forward."

When the check and returned check fee were not paid, The Money Box sued Southern Plumbing for the amount owed on the check plus interest, the returned check fee, and reasonable attorney's fees. The suit was originally filed in the justice court, and a summary judgment was rendered in favor of The Money Box. Southern Plumbing appealed *de novo* to the county court at law, and The Money Box again moved for summary judgment. The trial court granted the motion and awarded The Money Box the sum of $288.00 as the principal amount owed on the check, $20.00 for the returned check fee, costs from the justice court in the amount of $92.00, pre-judgment interest in the amount of $26.72, and the sum of $1,200.00 as reasonable and necessary attorney's fees. The Money Box also was conditionally awarded additional attorney's fees in the event of an appeal.

**DISCUSSION**

In its motion for summary judgment, The Money Box alleged it was entitled to judgment as a matter of law because it is the holder of Southern Plumbing's check, it took the check in good faith, without knowledge of any claims or defenses to the instrument, and it paid value for the check. The Money Box further alleged Olivarez endorsed and presented the check to The Money Box. In support of its motion, The Money Box submitted the affidavits of two of its employees, Janie Fernandez and Greg Graham, a copy of the check endorsed by Olivarez, and a copy of the letter it sent to Southern Plumbing regarding the dishonored check.

In her affidavit, Fernandez stated that on October 30, 2006 at 4:18 p.m., Robert Olivarez presented a check to her that was made payable to the order of Robert Olivarez. Prior to cashing the check, Fernandez asked Olivarez for identification, and she examined his photo and signature on his current Texas Driver's License. Fernandez compared the photo on the license to the person before her as well as the signature on the license to the back of the check. Satisfied that the person cashing the check was Olivarez, Fernandez cashed the check. Fernandez stated there was nothing unusual about the transaction to make her suspicious about the check, and there was no indication the check would be dishonored.

In his affidavit, Graham, an employee in charge of the collections department, stated that the check was returned unpaid by Southern Plumbing's bank, The Money Box notified Southern Plumbing that the check had been returned and that payment was expected. Graham said notice was sent to Southern Plumbing on November 9, 2006 to the address listed on the check. Attached to his affidavit was a copy of the notice along with the envelope that was returned by the post office as "not deliverable as addressed."

In its response to The Money Box's motion for summary judgment, Southern Plumbing alleged, with no supporting summary judgment evidence, that Olivarez "did not present, endorse in the presence of, nor deliver the check to [The Money Box]." Southern Plumbing also alleged, with no supporting summary judgment evidence, that The Money Box "cashed the check without acquiring proper identification or verification by any form of photo identification." In his affidavit, attached to Southern Plumbing's response, Lawrence Zamora said he issued a check to Olivarez on October 30, 2006. Several hours after giving Olivarez the check, Olivarez told Zamora he would not be able to work because he was being arrested on a warrant. Olivarez told Zamora he would destroy the check. Zamora said he placed a stop-payment on the check to ensure no one else would have access to the check. According to Zamora, Olivarez remained in custody of the Bexar County Jail and was, therefore, unable to contact him or cash any check given to him by Southern Plumbing. Zamora said The Money Box did not notify him in person, by telephone, or by mail that the check had not been destroyed. Zamora stated he only became aware of the problem with the check when he was served with court papers on April 19, 2007. Lastly, because of vandalism problems, Zamora said he did not have a mailbox at the address listed on the check, and because the U.S. Postal Office does not recognize the physical address as a deliverable address because he did not have a mailbox at his business location, he "was advised by the U.S. Postal Office in Elmendorf to get a Post Office Box."

## A. Genuineness of Olivarez's Endorsement

Southern Plumbing first asserts a fact issue exists with regard to whether Olivarez was the individual who cashed the check.

The authenticity of each signature on a check is "admitted unless specifically denied in the pleadings." TEX. BUS. & COM. CODE ANN. § 3.308(a) (Vernon 2002); *see also Obasi v. Univ. of Okla. Health Sci. Center*, No. 04-04-00016-CV, 2004 WL 2418009, at *2 (Tex. App.—San Antonio, Oct. 27, 2004, pet. denied) (deeming signatures as admitted because movant failed to deny the genuineness of the signatures on a note). Also, the Texas Rules of Civil Procedure require a pleading that denies the genuineness of an endorsement to be sworn or verified by affidavit. *See* TEX. R. CIV. PROC. 93(8). Here, Southern Plumbing did not specifically deny the genuineness of Olivarez's signature on the check. Therefore, the genuineness of Olivarez's endorsement is deemed admitted.

## B. Southern Plumbing's Affirmative Defenses

Southern Plumbing next asserts, without further elaboration, that it had valid affirmative defenses of fraud, contributory negligence, and assumption of the risk. Southern Plumbing did not raise these affirmative defenses in either its answer or supplemental answer. *See* TEX. R. CIV. P. 94 (requiring that affirmative defenses be pled). In addition, Southern Plumbing did not raise these affirmative defenses in its response to The Money Box's motion for summary judgment. Therefore, Southern Plumbing may not raise these defenses for the first time on appeal. *See Dynamic Pub. & Distributing L.L.C. v. Unitec Indus. Center Prop. Owners Ass'n, Inc.*, 167 S.W.3d 341, 349 (Tex. App.—San Antonio 2005, no pet.).

## C. Notice

In a single sentence, Southern Plumbing asserts as follows: "No notice was ever given to [Southern Plumbing] about the Money Box being a possible 'holder in due course' prior to suit being filed as is claimed in Plaintiff's affidavits." Southern Plumbing does not elaborate on this assertion, nor does it provide any authority for the proposition that a holder in due course must provide notice of its status as such to any party against which it seeks to enforce a dishonored check. TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). The Money Box was, at most, required only to provide notice of dishonor for the purpose of enforcing Southern Plumbing's obligation, as the drawer, to pay the check.[1] *See* TEX. BUS. & COM. CODE ANN. §§ 3.414(b), 3.503(a)(2), 3.504(b). Southern Plumbing's assertion on appeal, even liberally construed, does not constitute a challenge to whether The Money Box properly provided notice of dishonor. Therefore, we conclude Southern Plumbing's contention that The Money Box failed to provide notice of its status as a holder in due course is without merit.

## D. Contract

Finally, Southern Plumbing asserts summary judgment was improper because The Money Box failed to present evidence of a contract between Southern Plumbing and The Money Box. The question presented is whether The Money Box was required to establish that Southern Plumbing's check constituted a contract to be entitled to summary judgment. A similar issue was considered by

---

[1] As we note above, it is undisputed The Money Box notified Southern Plumbing by certified mail, sent to the address on the check, that the check had been returned, but the envelope was "returned to sender, not deliverable as addressed, unable to forward."

the Dallas Court of Appeals in *Time Out Grocery v. The Vanguard Group*, 187 S.W.3d 41 (Tex. App.—Dallas 2005, no pet.).

In that case, Michael Hopper cashed a check at Time Out Grocery. However, The Vanguard Group ("Vanguard"), which issued the check to Hopper, later placed a stop-payment order, and Vanguard's bank refused to pay Time Out Grocery. *Id.* at 42. After Time Out Grocery unsuccessfully demanded payment from Vanguard, it sued Vanguard. *Id.* The trial court granted Time Out Grocery's motion for summary judgment as to the amount of the check and returned check fee; however, the trial court concluded Time Out Grocery was not entitled to recover attorney's fees. *Id.*

On appeal, Time Out Grocery argued the trial court erred in denying its attorney's fees because Vanguard's obligation to pay the check was contractual in nature. *Id*. at 43. Time Out Grocery argued the term "contract" is defined as "a promise or set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." *Id*. (quoting Restatement (Second) of Contracts § 1 (1981)). Time Out Grocery reasoned that the definition of "contract," liberally construed, included a dishonored check because Business and Commerce Code section 3.104 defines a "check" as "'an unconditional promise or order [by its drawer] to pay a fixed amount of money' and [Business and Commerce Code] section 3.414(b) establishes Vanguard's obligation as the drawer to pay a check upon dishonor." *Id*. Therefore, according to Time Out Grocery, Vanguard's promise or obligation under the Code was a contract. *Id*.

The court of appeals rejected Time Out Grocery's argument, holding that the check was not a contract because "the promise and obligation embodied in sections 3.104 and 3.414(b) lack the

element of mutual promises between Vanguard and Time Out Grocery necessary to create a contract between them." *Id.* at 44; *see also Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487, 489 (Tex. 1943) (noting that a "bilateral contract is one in which there are mutual promises between two parties to the contract, each party being both a promisor and a promisee"). The court concluded Vanguard's obligation to Time Out Grocery arose from a statutory, and not contractual, obligation. *Time Out Grocery*, 187 S.W.3d at 44.

We agree with the Dallas court's reasoning. *See id; but see Cmt. Nat'l Bank v. Channelview Bank*, 814 S.W.2d 424, 427 (Tex. App.—Houston [1st Dist.] 1991, no writ) (holding that a cashier's check constitutes a written contract with maker impliedly agreeing to pay face value to any authorized holder); *Barham v. Sugar Creek Nat'l Bank*, 612 S.W.2d 78, 80 (Tex. Civ. App.—Houston [14th Dist.] 1981, no writ) (holding that a check can establish a contractual relationship). In this case, as in *Time Out Grocery*, Southern Plumbing's obligation to pay the check arises from the statutory obligation of a drawer as set forth in Business and Commerce Code section 3.414(b). *See* TEX. BUS. & COM. CODE ANN. § 3.414(b) (establishing drawer's obligation to pay dishonored check); *see also Time Out Grocery*, 187 S.W.3d at 44. Because Southern Plumbing's obligation to pay the dishonored check was statutory, and not contractual, The Money Box was not required to establish a contract between Southern Plumbing and itself.

**E. Attorney's Fees**

Lastly, Southern Plumbing contends the trial court erred in awarding attorney's fees to The Money Box. We agree. Attorney's fees are not recoverable unless the fees are provided for by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). In this case, The Money Box did not rely on any statute awarding attorney's fees. Instead, The Money Box

sought attorney's fees based on its contention that the check constituted a written contract. As noted above, however, Southern Plumbing's obligation to pay the dishonored check was not a contractual obligation. Accordingly, The Money Box is not entitled to recover attorney's fees.

## CONCLUSION

Based on the foregoing, we reverse that portion of the trial court's judgment awarding The Money Box attorney's fees and render judgment that The Money Box is not entitled to recover attorney's fees. We affirm the trial court's judgment in all other respects.

Sandee Bryan Marion, Justice